PHILIP HOWARD v. SUSAN E. RICHESON.

Where the boundaries of colonies conflicted, unless the elder was exclusive, grants under either to land within the territory common to both, were effectual to pass the title of the Government and vest it in the grantee. If grants in such a case, under one conflicted with grants under the other, the elder grant would prevail. See what is said in this case about the boundaries of the colonies of De Leon and DeWitt.

Where an occupant under a location has notice of a previous grant, he cannot, when sued by the previous grantee or those claiming under him, claim compensation for improvements.

Where the plaintiff offered a *testimonio* in evidence, and defendant objected on the ground that its execution and the authority of the commissioner were not proved' which objection was overruled, to which ruling the defendant excepted ; and afterwards the plaintiff introduced in evidence without objection a translation from the Land Office, of the protocol, on appeal the Court said, the objection to the admission of the plaintiff's evidence of title, if well taken, was removed by the introduction of the copy from the Land Office, admitted without objection.

Appeal from Victoria. The appellee sued the appellant and others for a league of land, claiming as heir of Edwin Richeson, under a grant to him as a colonist of the empresario Green DeWitt. The defendants claimed under locations. The petition was in the ordinary form of trespass to try title. The defendants plead not guilty, and subsequently filed an amended answer in which, after denying the existence of any grant to Richeson of the land sued for, they aver that if any such title was ever issued, it was fraudulent, null and void, because,

1st. The said land was not at the date of said title within the limits of the colony of the empresario Green DeWitt, but was when said title issued within the limits of the colony of the empresario Martin De Leon.

2d. Said land was not appropriated, and said title did not issue, until after the expiration of said DeWitt's colony contract.

3d. Said grantee was not a settler and colonist of said De-Witt.

They also suggested improvements.

There was a verdict and judgment for plaintiff and motion for a new trial.

Plaintiff offered in evidence the *testimonio* of title (with a translation) to Edwin Richeson, which was objected to, because,

. 1st. The execution had not been proven.

2d. The authority of the commissioner, and that the land was within the limits of DeWitt's colony, had not been shown.

These objections were overruled, the translation read and defendants excepted. The description called for the Lavaca Creek, near* the La Bahia road, about nine leagues from Gonzales.

The plaintiff then proved that she was the only surviving child of Edwin Richeson and wife, who were married in Louisiana, and removed to Brazoria county, Texas, in April, 1830, where she was born in June, 1830 ; that she had never been out of the State ; That her mother died in Texas in 1832, and her father in Mexico in 1833, while temporarily absent. Plaintiff's witnesses stated on cross examination, that the family of Richeson were never in DeWitt's colony ; that defendants took possession about Christmas, 1848, and were notified in 1849, that the land belonged to the plaintiff.

The defendants read in evidence translated copies-from the Land Office, 1st, of the second or extension contract of the

---

* The translation of the *testimonio* read " near," and that of the protocol read " by." REPS.

Empresario Martin de Leon ; 2d, of a grant to A. Smothers as a colonist of said DeLeon; and proved by parol that the road from La Bahia del Espiritu Santo to Nacogdoches was from two to four miles above the land in their possession ; that there were three surveys between it and said road, one of one-third of a league, and two of a labor each ; that A. Smothers' one-fourth of a league crossed said road ; that M. De-Leon exercised jurisdiction as Empresario over the country lying between the Lavaca and Guadalupe rivers and below the said LaBahia road ; that Fernando De Leon, as commissioner of said Martin De Leon's colony, issued titles within those limits, and that witness, who had been acquainted with that section of the country for twenty years, knew of no title except that claimed by plaintiff, having ever been extended on the Lavaca river within those limits by any other commissioner.    Defendants also offered to prove that they had erected improvements on the land of the value of $2,000, which was refused and they excepted.    They also offered in evidence copies certified to by. the surveyor of their entries of locations and re-locations which were objected to and ruled out as evidence of title and of the defendants' right to recover the value of their improvements, but were allowed to go to the jury in mitigation of damages ; to which defendants excepted.

The locations were first made in 1848, and were renewed April 23, 1853 ; the entry of the locations called to cover the league of land formerly supposed to have been granted to E. Richeson.

Defendants then proved that their locations covered the land held by them, and again offered to prove the value of their improvements which was refused and they excepted.    It was also proved that the Bexar and Nacogdoches road was fifty miles above the land sued for.

Plaintiff's evidence in rebuttal.    Plaintiff read in rebuttal translated copies from the Land Office, 1st, of the colony contract of DeWitt; 2d, of the protocol of the Richeson grant ; 3d, of the first and second contracts of DeLeon and all the pa-

pers relating thereto which are the same with those reported in the Bissel v. Haynes case, 9th Vol. Tex. R.

*Phillips & Phillips*, for appellant.  The grounds relied upon for reversal are,

1st. The *testimonio* of title to Richeson was erroniously admitted in evidence.

2d.  There was error in excluding as evidence of title and possession in good faith, the locations of defendants with the certificates, transfers, &c.

3d. The land was not identified.

4th. If identified, it was shown not to be the land held by defendants.

5th. The title to Edwin Richeson was issued without authority of, and contrary to law.

I.  The plaintiff should have been required to prove the execution of the *testimonio*, or at least some evidence of its genuineness should have been required. (Herndon v. Casiano, 7 Tex. R.; Paschal v. Perez, 7 Id.; DeLeon v. White, 9 Id.)

II.  The rejection of the locations of defendant as evidence of title was not perhaps material, as the plaintiff was bound to show title in herself, but the locations were important evidence of possession in good faith under the suggestion of improvements, and should not have been excluded.

III.  The 3d and 4th grounds may be considered together.

The petition of Richeson to the commissioner Navarro prays for a league of land on the Lavaca creek, about nine leagues from Gonzales adjoining what is called the middle road. The title of possession describes it as " situated on the Lavaca " creek about nine leagues from Gonzales, by the LaBahia " road, beginning on the S. W. side of said creek at a point " where set a mound in front and precisely south of the lower " corner of a league in Austin's colony which belongs to Eli- " sha Ratcliff, from whence the line runs S. 35° W. 7445 " varas to the S. W. corner, and from thence S. 55° E. 3225

" varas, where set a stake from which an oak 10 inches in
" diameter, bears S. 67° W. at 5 varas distance and another
" of 12 inches in diameter bears N. 35° E. at 4½ varas dis-
" tance ; from thence N. 35° E. 7820 varas to the said creek,
" where set a mound and from this to the point of commence-
" ment, following the course of the creek with its bends."

This survey calls for only three natural objects, the creek
and two bearing trees at the third corner not marked. There
were no marked lines and no calls to fix the 2d, 3d and 4th
corners except course and distance. Their establishment then
depended altogether upon the ascertainment of the beginning
corner, and to fix that the field notes call for the La Bahia road
and the lower corner of the Ratcliff league. There was no
evidence whatever with regard to the Ratcliff league, but I
am informed there is no such grant, and it was conclusively
proven, not only that the La Bahia road is from two to four
miles above the land sought to be recovered, but that there
were three surveys, one of one-third of a league and two of a
labor each, intervening between said land and said road. No
order of survey was asked for and none ever made under plain-
tiff's title since it issued so far as the facts show, nor was any
evidence introduced by plaintiff at the trial to fix the locality
of any one of the corners. Taking the crossing of the La Ba-
hia road for the commencement of the survey, and it would
reach no part of the land sued for, for the back line is only
3225 varas in length.

It is therefore respectfully submitted that the verdict of the
Jury was not supported by the evidence, and the Judge erred
in overruling the motion for a new trial.

IV. The grant to Edwin Richeson was null and void from
the beginning, did not sever the land from the mass of the pub-
lic domain and conferred no rights; because the land was
within the limits of Martin De Leon's colony and beyond the
jurisdiction of the commissioner of DeWitt's colony. The
law was settled by this Court in the case of Russell v. Mason's
heirs. The only question is, do the facts of this case bring it
within the rule of decision in that case ?

The appellant contends that the right to colonize the land sued for, was disputed between De Leon and DeWitt, and that the dispute was decided in favor of the former, by competent authority, long before Richeson removed to Texas. If so, it is conclusive, under the opinion of this Court in the case of Bissell v. Haynes, 9 Tex. R.

On the 13th of April, 1824, Martin De Leon made his first contract with the provincial deputation, by the terms of which the limits of his colony were not to be designated and estabtablished by fixed boundaries, until he had introduced the whole, or a part, of the families he had undertaken to settle. By the time this was effected the provincial deputation had been dissolved, and there was no authority to which he could apply to fix his boundaries except the nearest Alcalde, of whom he made a requirement to that effect. Finally, when the Legislature of the State was organized, and before he could withdraw his attention from the protection of the lives and property of his settlers from the incursions of the savage Indians, so as to apply, under the new order of things, for the permanent establishment of his boundaries, to wit: on the 15th April, 1825, the foreigner Green DeWitt contracted to colonize all the territory between the Guadalupe and Lavaca rivers, above the line of the littoral leagues and below the royal road from Bexar to Nacogdoches, including the settlement of De Leon. DeWitt under his contract assumed jurisdiction over the land occupied by De Leon, and interfered with the settlers in their building, farming, &c. In August, 1825, Martin De Leon petitioned the Governor, representing all the foregoing facts, complaining of the interference of DeWitt; claiming preference not only as a Mexican, but as the first occupant and contractor; stating that his settlers understood his colony to embrace all the territory between the Guadalupe and Lavaca rivers, above the littoral leagues and below the road from La Bahia del Espiritu Santo to Nacogdoches, and praying for the appointment of a commissioner to put him in formal possession of the limits described. This petition, to-

gether with a copy of his contract with the provincial deputa-
tion and of his application to the Alcalde of La Bahia, were
transmitted by the Political Chief to the Governor with a letter
from him, dated August 21st, 1825, giving it as his opinion
that the contract of De Leon with the provincial deputation
was a legal one, that preference should be given to De Leon
over the foreigner Green DeWitt; and recommending that a
commissioner be appointed to put De Leon in possession of
the limits described in his petition, which were deemed neces-
sary for the settlement of the families he had undertaken to
colonize.  The petition and recommendation of the Political
Chief, with the accompanying documents, were directed by the
Governor to be annexed to the file of papers relating to the
subject matter, that action might be had thereon, and on the
6th of October, 1825, the Governor decreed that the Provincial
deputation had authority to contract with De Leon, confirmed
the contract, decided the controversy between De Leon and
DeWitt in favor of the former, because the latter by his con-
tract was bound to respect previously acquired rights; declared
the settlement of De Leon subject to the requirements of the
law of colonizatian, and directed that DeWitt should be noti-
fied of the decree that he might no longer interfere with De
Leon in the settlement of his colony.  This decree was an ad-
judication upon the petition of De Leon and can be under-
stood in no other way, than as confirming in its fullest extent
the claim of the petitioner.  It was a general verdict and
judgment in his favor without restriction and without qualifi-
cation.  On the 30th of October, 1825, the Political Chief ac-
knowledges the receipt of the decree and informs the Governor
that he had given copies to both Empresarios, to De Leon for
his information and to DeWitt for his observance.  On the
18th of May, 1827, De Leon again memorialized the Gover-
nor reciting that DeWitt had not molested him since he was
notified of the decree of the 6th of October, 1825, but to pre-
vent future difficulties, praying that a commissioner might be
appointed to put him in formal possession of the limits de-

scribed as before to be " from the point at which the boundary
" line of the ten coast border leagues crosses the river Lavaca;
" thence with its right bank upwards, to the road leading
" from La Bahia del Espiritu Santo to Nacogdoches ; thence
" on a straight line south with said road to the river Guada-
" lupe, at the place known as Anastaiso Ford ; thence with
" the left bank of said river to the farm (Rancho) of San
" Francisco (which although perhaps within the coast border
" leagues, your petitioner thinks may be permitted to remain
" within his boundaries, as he settled previous to the publica-
" tion of the general colonization law, and because he has his
" stock of cattle and horses on it, and accustomed to the place,)
" and thence on a straight line to the river Lavaca, at the
" place of beginning, permitting him to designate by land
" marks the four points of his boundaries," and to notify
Green DeWitt. This petition was also accompanied by a let-
ter of the Political Chief, dated 27th May, 1827.

On the 15th of June, 1827, Victor Blanco in the capacity
of Governor writes to the Political Chief that he is desirous
of disposing of the petition of De Leon, and requests him to
recommend a suitable person to be appointed commissioner to
issue titles, &c. The Political Chief explains that a commis-
sioner of boundaries only is asked and tenders his own ser-
vices. How can this action of Victor Blanco be explained
unless the claim of De Leon had been fully recognized and
confirmed by the Government.

On the 4th of December, 1828, the Governor writes to the
Political Chief " for the purposes of distributing and giving
" possession of lands to the Empresarios, colonists and pur-
" chasers, who have contracted with the Government, I have
" under this date commissioned citizen Juan Antonio Redella,
" who is authorized to put such persons in possession, and as
" one of such the citizen Martin De Leon. This I communi-
" cate to your honor for his information, and in reply to your
" official letter of the 27th May, 1827, with which was trans-
" mitted to me the petition of the before mentioned De Leon,
" dated the 18th of said month and year.

It will be seen that Padilla was appointed commissioner not to adjudicate upon and settle the conflicting claims of opposing Empresarios, but simply to put those in possession, whose limits were already recognized and confirmed by the Government, and among that number Martin De Leon. This appointment was communicated to the Political Chief for De Leon's information and in reply to the Political Chief's letter of the 27th of May, 1827, with which was transmitted the second memorial of De Leon. There is no report of the action of Padilla under this appointment (in the absence of all proof it would be presumed that he did his duty) but that he did put De Leon in formal possession of the limits claimed by him, or at least, that De Leon's right to those limits was considered by the Government, on the 30th of April, 1829, settled and undisputed, is evident. For on that date an extension of his first contract was granted to him, beginning at the crossing of the Lavaca river by the La Bahia road, just where he claimed his first contract terminated, and running up the Lavaca one league, thence on a line parallel with said road to cross the Guadalupe at the Lego Ford, until it strikes the Coletto creek and down the Coletto to its junction with the said Guadalupe river. On the 20th of April, 1831, Fernando De Leon was appointed commissioner to issue titles to the colonists introduced and to be introduced by Martin De Leon under his first and second contracts.

DeWitt did not complain of, but acquiesced in, the preference given to De Leon under his first contract. Not so with regard to the augmentation. On the 31st of May, 1831, the Governor in answer to an official letter of Navarro, commissioner of DeWitt's colony, declares the augmentation of no effect, where it conflcts with the area previously granted to DeWitt, and informs the Political Chief for his future guidance, that conflicts in the colonial enterprizes arise from ignorance in the officers of Government of the localities, and in all instances the second contract must be regarded as of no

effect, because that cannot be held which could not legally be acquired.

It is believed, but it does not satisfactorily appear from the record, that this decree in favor of DeWitt, was subsequently set aside, under a decision of the Supreme Federal Executive made in 1832, and De Leon's right to the entire territory embraced in his second contract confirmed. Certain it is that F. De Leon as late as 1834 and 1835 extended titles above, as well as below, the La Bahia road without objection. Both of De Leon's contracts have been recognized by this Court in the cases of Bissell v. Haynes, De Leon v. White and Wheeler v. Moody, 9 Tex. R. The evidence shows the land to be from two to four miles below the La Bahia road, and as I think has been proven, within the limits of De Leon's first contract and of course embraced by his second contract, which was an extension of the first, although it may have been void where it conflicted with DeWitt's boundaries. De Leon's first contract either extended over all the territory between the two rivers, above the littoral leagues and below the La Bahia road, or it was confined to the town tract of Victoria. If the first, then the commissioner of DeWitt's colony had no jurisdiction of the land in controversy, unless we absurdly conclude, in opposition to the decisions of the former political and judicial authorities of the country before the revolution, that the two Empresarios had an equal right at the same time, to colonize the same land. If the last, and if his second contract was void so far as it conflicted with DeWitt's boundaries, then all De Leons titles to lands above the littoral leagues (and they comprise a large part of all he ever granted) were issued without authority of law.

If De Leon had jurisdiction over the country between the two rivers and below the La Bahia road by virtue either of his first or second contract, or both, it is respectfully submitted that the judgment of the District Court must be reversed, and the suit dismissed.

Had the title to Richeson issued, or had he occupied the

land, before the authorities of the Government decided in favor of De Leon, then perhaps the principles of the decision in the case of Robertson v. Teal, 9 Tex. R., might apply, but the proof was that he did not come to the country until April, 1830, and not then to the colony of DeWitt; that he never settled upon the land; that his family were never in the colony, and the title of possession did not issue until September, 1831, six months after DeWitt's contract had expired by its own limitation.

*G. Quinan,* for appellee. I. The *testimonio* was admissible without proof of its execution; and if it were not, yet the grant to Richeson was well proved by the translated copy from the Land Office read without objection. (Hart. Dig. Art. 744.)

II. Howard's locations were inadmissible to prove title and possession in good faith. His first entry is December, 1848, and there was no proof or offer to prove a survey under it. It was therefore void. (Pamphlet Laws, 1852, page 59.) His second entry was made 23d April, 1853, and void upon its face, as of land previously patented to Richeson in DeWitt's or De Leon's colony. (Hart. Dig., 2269.) A void location by plaintiff cannot constitute him a possessor in good faith. He has neither title nor color of title, but is a wilful and knowing wrong doer.

III. The land was sufficiently identified. The La Bahia road is not made a boundary, but is mentioned to shew whereabout the land lies. If it were so given, it must be controlled by the fixed mounds, trees, corners and stakes.

The land was shown to be that held by defendants; by their suggestion of possession; by their entry; by their re-entry; by the witnesses Ballard and Valentine.

IV. The land was in DeWitt's colony.

1st. So the law presumes from the grant. (Robertson v. Teal, 9 Tex.)

2d. DeWitt's colony contract fixed his upper boundary at

the Bexar and Nacogdoches road, our land is therefore included within it as the proof shows.

The contract is dated 15th April, 1825, but De Leon obtained a contract 30th April, 1829, which conflicting with DeWitt would include this Richeson league.

But the proper authorities determined May 2, 1831, that DeWitt's grant had precedence of De Leon's, and so far as De Leon's conflicted with it, it should be of no effect. This decision was certified to Navarro, the commissioner, and he was directed to proceed to extend titles to DeWitt's settlers, and so Navarro did, issuing this title among others.

It is suggested by appellant that this title was the only one issued by DeWitt within this conflict. This, as a matter of history, is not so; but if it were, it gives great weight to the decision of the authorities in this case, for it would then appear that a controversy arose upon the issuance of this identical title; that it was because of it Navarro addressed the Government, and that this specially was both the cause and the effect of the rendition of the Government's decree.

It is suggested this decree has been reversed by the Supreme Federal Executive in a controversy respecting the littoral leagues. Now there is, 1st, no proof of that. The decision is subsequently referred to as sound ; Aug. 31, Report of the permanent Com. page 100.

2d. The Federal Executive had nothing to do in the affair.

3d. DeWitt's contract had expired and his titles been extended, and there was no use or occasion for any such decree nor any sense in rendering it, if in fact it were made.

Again. Admit De Leon had the better right to the conflicting territory ; yet he might waive it, and the fact that he never granted this league of land to any one, and that DeWitt did, would prove that he did waive it. These defendants could not raise the question of De Leon's preference unless claiming under De Leon. If Government grant to different Empresarios the right to colonize within the same limits, neither grant is necessarily void. The colonial contract does not

convey the land; it vests the privilege of locating such parts of it as may be located. The elder contract has within these limits the preference, but a location and grant under the junior contract, if not upon lands previously or subsequently granted under the elder contract, is good. It is like the case of several mortgages upon the same land.

Appellants urge that if this grant of DeWitt's be good, all De Leon's are void; not a bit of it. DeWitt's contract expired in 1831; De Leon's in 1835. De Leon's titles were issued in 1835, and there was then no conflict, and could be none between him and DeWitt, for DeWitt's business was ended.

WHEELER, J. There are but two grounds of error relied on which require notice. These are, 1st, as to the validity of the plaintiff's title; 2d, as to the right of the defendants to claim compensation for their improvements.

There can be no question that the land in controversy is within the territorial limits of De Witt's contract of colonization. Of this the grant itself was *prima facie* evidence (Hatch v. Dunn, 11 Tex. R. 708; Robertson v. Teal, 9 Id. 344,) and the fact was fully proved. Under the contract the Empresario was empowered by the Government to make the grant, and the commissioner to issue the title to the land granted. And it is therefore unlike the case of Mason v. Russell's heirs (1 Tex. R. 721) cited by counsel for the appellant. That was the case of a grant by the commissioner of a colony of lands lying wholly without the limits embraced by the contract to colonize. The contract under which the power to make the grant was claimed and exercised, did not confer the authority, The power was wanting, and the grant was consequently void. Here there can be no question that the power to make the grant was conferred by the Government. But it is contended that the land was also comprised within the contract of De Leon. If it were so, it does not necessarily follow that the title is void. Two persons might be empowered to grant

lands within the same territorial limits, without an exclusive right in either. And unless the right of one was exclusive, or their grants were in conflict, in which case the elder would prevail, the grant of either would be effectual to pass the title of the Government and vest it in the grantee. And though one may have had the superior, unless it was the exclusive right, it would not effect the power of the other to grant, or the validity of his grants, subject to the assertion of the superior right; and the question as to whose was the better right could only arise in the case of a conflict. As between the Government and the grantee, there could be no question of the right of the grantee, and his right could only be questioned by one claiming the superior or preferred right and those deriving title through him. Here, then was no conflict in the exercise of the granting power by the respective Empresarios claiming the right to colonize within that territory. And even after De Leon obtained the augmentation or extension of the limits of his colony, and exercised the undisputed right to make grants within these limits, he appears to have respected this grant by DeWitt. But at the date of DeWitt's contract, the boundaries of De Leon's colony were not established; and it is by no means clear that they included the land in question. And as respects the conflict caused by the augmentation, the right of DeWitt appears to have been recognized by the Government as superior to that of De Leon; being prior in point of time; and the extension and boundaries asked by the latter having been conceded, in ignorance of the fact that they would include lands embraced in the contract of the latter; as appears by the executive mandate of the 2d of May, 1831. It is true that under his first grant De Leon asserted a claim to the territory within which this land is situated; and there was a question as to his right under that grant. But there was no question as to the right of DeWitt under his contract. It unquestionably embraced the land granted by him; and, as between his grantee and the Government, his right is indisputable. And it is sufficient for the present inquiry, that it

does not appear by the evidence, that his authority to grant within these limits was ever revoked, or that by any action of the existing authorities, he was restricted in the exercise of the power within other limits.   And, it is worthy of remark, that the same person, who, it is insisted, was commissioned to put De Leon in possession, issued the title now in question as commissioner of DeWitt's colony.   There is, therefore, every reason to believe that the grant was made conformably to law, with a due respect to the ascertained rights of the Empresario De Leon, and none whatever for the supposition that either the Empresario DeWitt or the commissioner, exceeded his power in making it.

It is very clear that the defendants were not entitled to claim compensation for their improvements.   Their locations evidenced their knowledge of the prior grant ; and they had actual notice of the plaintiff's title and right to the land, and ample warning that they would occupy at their peril, at the time, or shortly after they entered upon it.   Yet they went on to make improvements in utter recklessness of the warning and disregard of the rights of the plaintiff; and if they have suffered the loss of their labor expended in improving and ameliorating the condition of the property, it is in consequence of their own recklessness, in the ill advised attempt to appropriate to themselves, without right, the justly acquired property of another.   To such a case the maxim applies that "He that hath committed inequity, shall not have equity." (Francis Maxims, II.)   A clearer case of actual notice of the prior title, and of the want of good faith towards the proprietor, could not have been made out.   The evidence, therefore, by which the defendants proposed to establish their right to compensation for improvements was very properly excluded.

The objection to the admission of the plaintiff's evidence of title, if well taken, was removed by the introduction of the copy from the Land Office, admitted without objection.   And it is a sufficient answer to the objection that the evidence did not identify the land, that it was described with certainty in

the title; and the possession of the defendants was admitted upon the record by their suggestion of having made improvements; and was fully proved by the witnesses. We are of opinion that there is no error in the judgment, and it is affirmed.

Judgment affirmed.