James E. POOSER, et ux. and James E. Ross, et ux., Appellants,

v.

The LOVETT SQUARE TOWNHOMES OWNERS' ASSOCIATION, Appellee.

No. 01–85–0057–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 7, 1985.

Rehearing Denied Dec. 5, 1985.

Charles W. Kelly and David A. Furlow, Ross, Griggs & Harrison, Houston, for appellants.

H. Miles Cohn, Schlanger, Cook, Cohn, Mills & Grossberg, Houston, for appellee.

Before SAM BASS, DUNN and KEITH (Retired), JJ.

## OPINION

SAM BASS, Justice.

This is an appeal from a final judgment in favor of appellees in a suit by appellants to enjoin the collection of condominium maintenance fees. Trial was to the court.

We affirm.

Appellants, James E. Pooser, et ux, and James E. Ross, et ux, d/b/a Ross Ventures, were the owners of two condominium homes at Lovett Square, a condominium project in Houston, Texas. Ross Ventures purchased Unit No. 10 several years prior to trial. Pooser purchased Unit No. 9 about the same time and then sold it to Ross Ventures, who later conveyed it to a third party.

In 1983, appellants brought suit against Lovett Square Townhomes Owners' Association [appellee], to enjoin the collection of past-due maintenance assessments until certain claimed offsets against said assessments had been satisfied. Ross and Pooser claim that the appellee breached its duty to keep their roofs in good condition and repair, resulting in the expenditure of money by appellants to repair leaking roofs and damage resulting from such leakage for which they seek credit.

Appellee filed a counterclaim for past-due assessments, interest and attorney's fees, arguing that the leakage problems were caused by defective design and construction of the roofs by the architect and developers of Lovett Square.

The court entered judgment denying the relief sought by appellants and granting appellee relief on its counterclaim. Upon request, the trial court entered its findings of fact and conclusions of law.

■ Appellants' first point of error contains five of the six points of error presented on appeal. An assignment of error is multifarious if it embraces more than one specific ground of error, or if it attacks several distinct rulings of the court. This court may disregard an assignment of error that is multifarious. However, multifarious points may be considered, if, after reviewing the argument, the appellate court can determine with a reasonable certainty the nature of the complaint raised. *Shwiff v. Priest*, 650 S.W.2d 894, 898 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.); *Citizens Building Inc. v. Azios*, 590 S.W.2d 569, 572 (Tex.Civ.App.—Houston, [1st Dist.] 1979, writ ref'd n.r.e.); *Rio Delta Land Co. v. Johnson*, 566 S.W.2d 710, 713 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). Because we can distinguish the various points raised in the appellants' first point of error, we shall address the respective points.

Appellants essentially raise factual insufficiency points of error. In deciding a factual insufficiency point, we are required to review all the evidence, including that contrary to the finding of the court, and decide whether the judgment was so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (Tex.1951); *Pfeffer v. Southern Texas Laborers' Pension Trust Fund*, 679 S.W.2d 691, 694 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.); *Behring International, Inc. v. Greater Houston Bank*, 662 S.W.2d 642, 648 (Tex.App.—Houston [1st Dist.] 1983, no writ).

■ In their first point of error, appellants allege that the court erred in making findings of fact numbers 9 and 10, because they are in conflict with finding of fact number 8. These findings are as follows:

8. All condominium units at Lovett Square suffer serious leaking problems. These problems consist primarily of water seepage at the perimeters of the various roofs, through the metal flashing construction joining the walls and roofs. These roofing problems are the result of the defective design and construction of the roofs at Lovett Square. Because of these initial defects left by the builders and developers of Lovett Square, all units continue to suffer serious leakage problems.

9. The Association has not failed and refused to keep in good order, condition and repair the roofs and outside walls of the Plaintiffs' condominium units. The Association has undertaken all reasonable and usual maintenance measures, and has kept the roofs in at least as good order, condition and repair as were the roofs at the time of the construction of Lovett Square was completed and the units sold. Lovett Square's roofing problems are the result of the defective design and construction of the project, not of any failure to maintain the roofs.

10. The Association has taken several steps to deal with the leakage problem at Lovett Square. First, the

Association has retained counsel to file suit against the developers and architect of Lovett Square, and that lawsuit is now pending in the 80th District Court of Harris County, Texas. Second, the Association has sought expert advice concerning the roof problem, and in particular has retained Moisture Systems, Inc., a professional roof consulting firm, to evaluate the problem and devise a solution. Third, the Association has retained Moisture Systems, Inc. to draft plans and specifications for the proper repair of the roofs based on the study it had recently completed at the time of trial. Because the Association recognized that some condominium units suffered serious leakage problems that they could not await the completion of a lawsuit against the developers and architect, nor could they await the completion of an expert study and plans and specifications, the Association adopted an intermediate plan: The Association voted to allow those homeowners with such serious problems to repair their own roofs at their own expense, with the understanding that the Association would allow a reasonable setoff (based on the amount, if any, which such repairs later save the Association) against anticipated future special assessments for roof repairs, to compensate the homeowner in part for his initial expenditures. Approximately seven homeowners, including not only Plaintiff Ross but also three members of the Board of Managers, had taken this option and repaired their roofs at their own expense.

Appellants argue that there is a conflict "between the finding that there are serious leaking problems on one hand and the finding that the Association has not failed and refused to keep the roofs in a good state of repair on the other." Appellants ignore the final sentences of findings of fact numbers eight and nine, which state that the leakage problems do not result from the failure of appellee to properly maintain the roofs, but rather from the defective design and construction of the project. Appellants' first point of error is overruled.

■ Appellants' second point of error alleges that the court erred in making finding of fact number nine (set forth above) because it is "contrary to the evidence." Appellants contend that their condominium units "were leased in good order and condition," and started leaking later. Appellant Ross stated that in his opinion, the roofs had deteriorated following the purchase of the units and as a result of appellee's failure to maintain the roofs.

Ross' testimony is controverted by D.B. Hales, a roof design and construction consultant, who testified that he had substantial experience in the evaluation of roof leakage problems. He had conducted an extensive study of the roofs at Lovett Square. Based on his expertise and the study completed, Hales concluded that the roofing problems were caused primarily by defective design and secondly by poor construction. Hales also found numerous instances where maintenance had been performed, and found no evidence of any failure of the appellee to maintain the roofs as originally designed and constructed.

The testimony of Stephen M. Vaughan also disputes appellants' position. Vaughan testified that he had been a resident of Lovett Square since 1981, and was currently president of the board of managers of the Owners' Association. According to Vaughan, virtually every unit in the complex leaks, and more than half of the units have very serious leakage problems. He stated that the leakage problems in his unit began at the time of purchase, and that since 1982, he has actively participated with the homeowners in pursuing the developers to solve the leakage dilemma.

■ The record shows that it was always the understanding of the homeowners that the leakage problem did not result from poor maintenance on the part of appellee. This understanding is re-

flected in the course of action taken by the Association in seeking expert advice to evaluate the problem and devise a solution, and in filing suit against the developers and architects of the project. Ross was aware of such understanding, having been present at the Association meeting in April 1982, wherein the developer tendered control of the corporation to the homeowners. A plan was initiated at that meeting to pursue the developer to correct the leakage problems. It was set forth that the roof repairs were the developer's obligation, and the developer, Joubert, assured the homeowners at said meeting that he would cure the problem. A policy was approved by unanimous vote at subsequent board and membership meetings to implement offsets against anticipated future special assessments for roof repairs, at the time the entire complex was repaired or at the conclusion of the lawsuit against the developer, for those who had already fixed their roofs at their own expense.

Mr. Ross announced at the April 1982, meeting that he would not pay his assessments and would fix his roof and eventually offset the resulting cost against the homeowners' assessment. Subsequently, appellants chose not to participate in the Association's decisions or follow the Association's adopted plan. Appellants were not treated any differently than five to seven homeowners with serious roof leakage problems who followed the Association's policy and continued to pay their assessments. Now, appellants challenge appellee's alleged lack of maintenance and repair subsequent to appellants' actions. Ross admitted that roof repairs were effectuated on Unit No. 9 prior to or close to the April 1982, turnover and that he went ahead with roof repairs on Unit No. 10 about the same time. Appellants cannot seek credit in equity with unclean hands. *Howard v. Richeson*, 13 Tex. 553 (1855); *Regional Properties, Inc. v. Financial & Real Estate Consulting Co.*, 752 F.2d 178, 183 (5th Cir.1985). We overrule point of error two.

In point of error three, appellants claim that the court erred in making conclusion of law number five because the obligation of appellee to maintain the common areas is not independent of the right to collect maintenance funds. Conclusion of law number five reads in pertinent part: "The obligation of homeowners under the Declaration to pay maintenance assessments is independent of the Association's duty to maintain the common areas."

Vaughan admitted that the financial reserve of the project was weak and, therefore, substantially aggravated by appellants' overdue payments. He also testified that the maintenance funds were crucial to the operation of Lovett Square. The amount of assessments averaged $7,500.00 per month, barely covering the cost of operation of $7,500.00 to $9,000.00 per month. Operational costs included management expenses, maintenance costs of the common areas, and insurance coverage on the common elements. Appellants failed to pay their assessments from December 1980, through November 1984, and continued to reap the general benefits from assessments paid by other homeowners. The total amount of assessments owing by appellants was $16,558.36. Mr. Vaughan was of the opinion that if all of the homeowners chose appellants' course of action, Lovett Square would have to close down.

Neither the Lovett Square Declaration nor the Condominium Act mandates that the duty to pay assessments is contingent upon the obligation to repair common elements. Rather, payment in this case makes maintenance and repair more plausible. In fact, the declaration provides for no exemption whatsoever from payment of the assessments, stating in pertinent part: "No Owner is or shall be exempt from such obligation to make such payment by waiver of use of the Common Areas, or any portion thereof, or because of any restriction of such use pursuant to this Declaration, the By-Laws or the Rules and Regulations, *or for any other reason.*" (Emphasis supplied.) This contractual provision is consistent with the policy that apartment owners in condominiums accept the terms, con-

ditions, and restrictions in their Condominium Declaration by acceptance of deeds to the individual apartment units. *See Raymond v. Aquarius Condominium Owners Association, Inc.,* 662 S.W.2d 82, 87 (Tex. App.—Corpus Christi 1983, no writ); *Board of Directors of By The Sea Council of Co-Owners, Inc. v. Sondock,* 644 S.W.2d 774, 780 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.); Tex.Prop.Code Ann. sec. 81.001–81.210 (Vernon 1984) (hereinafter Condominium Act). The court determined that the appellants' right to setoff against the assessments was not abrogated but would accrue at some later date, and would not entitle appellants to circumvent their continuing obligation to timely pay their fair share of assessments. Appellants' third point of error is overruled.

■ Appellants' fourth point of error claims that the court erred in making conclusion of law number six because "reasonable action is not a substitute for the unambiguous requirements of the statute, bylaws, and Declarations of the Condominium Association." Conclusion of law number six reads as follows:

> "So long as a condominium association or board of managers has acted reasonably in the exercise of its duties under the condominium declaration, a condominium owner is not entitled to recover damages, or to avoid maintenance assessments, because of his disagreement with the actions taken by the association or board."

The court did not hold that the appellee had no duty to properly maintain the common elements of the project. Such duty was clearly provided for in the bylaws of Lovett Square. That the roofs are common elements was also undisputed. What was in dispute was the reasonableness of appellee's course of action. The record reflects that numerous repairs and steps were made to resolve the leakage problem. The majority of homeowners had rejected the proposal of levying special assessments to immediately cure the problem. Homeowners with particularly serious leakage problems, however, were allowed to immediately repair their roofs at their own expense and receive reimbursement later. This step was the result of three factors: appellee's financial reserve was weak; time was needed to discover the causes of leakage and devise proper solutions; and the roofing problem was always understood to be the developer's obligation.

The reasonableness of appellee's course of action must be measured in the context of the uniqueness of condominium living. "Condominium unit owners constitute a democratic subsociety, of necessity more restrictive in the use of condominium property than might be acceptable given traditional forms of property ownership. Therefore, each constituent must relinquish some degree of freedom of choice and agree to subordinate some of his traditional ownership rights when he elects this type of ownership experience." *Raymond,* 662 S.W.2d at 89; *see Board of Directors of By The Sea Council of Co-Owners, Inc.,* 644 S.W.2d at 780–81. The relinquishment of certain ownership rights is consistent with the condominium concept in Texas, which envisions the ownership of two estates merged into one: the fee simple ownership of an apartment or unit in a condominium project and a tenancy in common with other co-owners in the common elements. *Dutcher v. Owens,* 647 S.W.2d 948, 949 (Tex.1983).

The association was vested with considerable discretion in exerting managerial and administrative responsibilities, including the privilege to determine the necessary expenses for the operation of the condominium project, as well as solutions to the leakage problem, and to assess the owners their pro rata share for such "common expenses." There is no evidence that the Association's actions were either arbitrary or capricious. By purchasing a condominium unit, appellants delegated decision making authority concerning the common areas to appellee. Appellants then chose not to participate in their Association or to vote or run for office.

We follow *Raymond* and apply a standard of reasonableness in evaluating appellee's conduct. The delegation of authority

to the condominium association is implicit in the condominium scheme, and the record shows reasonable efforts of appellee to solve the leakage problem. Appellants' fourth point of error is overruled.

 Appellants' fifth point of error states that the court erred in making conclusion of law number seven, "because such a construction of the statute would abrogate the very purpose of the Condominium Act." Conclusion of law number seven reads as follows:

> "The Declaration's requirement that the Association, through its Board of Managers, shall have the duty 'to keep in good order, condition and repair all of the general and limited common elements,' does not require the Association to construct common elements that were never completed by the original developer, or to repair defects in the original design and construction of the project. This requirement states, instead, a duty to maintain the common areas in the condition in which they were originally constructed, reasonable wear and tear excepted."

Again, the standard that we must apply defines the extent of appellee's duties of maintenance and repair to be one of reasonableness. The bylaws of the Association require appellee to keep the common elements "in good order, condition and repair," not to reconstruct such elements. The Condominium Act expressly provides that the bylaws of a condominium regime govern the administration of the buildings that comprise the regime. Further, administrative expenses are referred to in the Act as those covering "maintenance and repair" (i.e., maintenance assessments), which are shared pro rata in the condominium project. The Act does not contemplate that administrative expenses include those necessary for the reconstruction or replacement of common elements, absent agreements to the contrary. Tex.Prop.Code Ann. sec. 81.202, 81.204. Faced with defectively designed and constructed roofing, appellee did all it could, save reconstruct and replace the roofs, to remedy the leakage problem. The court applied the proper standard. We overrule appellants' fifth point of error.

Appellants' final point of error alleges that the court erred in failing to enter judgment for appellants. Based upon the Declaration of the Association, the Condominium Act, and the record in this cause, we conclude that the court entered the proper judgment. Appellants' sixth point of error is overruled.

The judgment is affirmed.