Opinion issued November 10, 2010

 



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00507-CV

———————————

Yigal Bosch and Transamerica Corporation of Houston, Appellants

V.

Open PinEs
Condominium Owners Association, Inc., Appellee



 



 

On Appeal from the 157th District Court

Harris County, Texas



Trial Court Case No. 2007-75856

 



 

MEMORANDUM OPINION

Appellants, Yigal Bosch and Transamerica Corporation
of Houston (collectively, “Bosch”), sued Open Pines Condominium Owners
Association, Inc. (“Open Pines”) for breach of contract.  A jury found that Open Pines did not violate
the Declaration of the Association by approving a special assessment to replace
the siding of all condominiums in the complex and that Bosch voluntarily paid
this special assessment.  The trial court
entered a judgment for Open Pines and ordered that Bosch take nothing on his
claims.  In two issues on appeal, Bosch
argues that (1) Open Pines violated the Declaration of the Association when it
approved the special assessment without prior written approval from 95% of the
owners of the complex and (2) he did not pay the special assessment voluntarily.

We affirm.

BACKGROUND

Bosch has managed commercial real estate for approximately twenty-eight
years.  In 1992, Bosch, individually and
through his corporation, Transamerica Corporation,[1]
purchased eight condominium units in the Open Pines condominium complex, giving
him approximately eighteen percent ownership of the complex.  At the time that Bosch purchased these units,
he was aware that he was bound by the Declaration of the Association (“the
Declaration”).  The Declaration provides
for funding of the common expenses of maintaining the complex through both
monthly assessments and special assessments.  The Declaration defines common expenses as
follows:

“Common Expenses” shall mean and include:  (1) all sums assessed against the General
Common Elements and Limited Common Elements by the Association; (2) expenses of
administration and management, maintenance, repair, or replacement of the
General Common Elements and Limited Common Elements; (3) expenses declared to
be Common Expenses by the provisions of this Declaration or the ByLaws; and (4)
expenses agreed upon as Common Expenses by the Owners.

 

The Declaration provides for
monthly assessments in Section 14:

 

14. Assessments for Common Expenses.

(a) The Managing Agent or Board of Managers, as the case may be, shall
from time to time determine the cash requirements necessary to provide for the
payment of all estimated expenses growing out of or connected with the
ownership, maintenance, and operation of the
Property. . . .  After determining such cash requirements,
the Managing Agent or Board of Managers shall establish monthly assessments
based thereupon, which assessment shall be paid by each Owner as hereinafter
provided.

 

The Declaration provides for
special assessments in Section 21:

 

21. Reconstruction of General Common Elements. The Owners
representing an aggregate ownership interest in the General Common Elements of
ninety-five percent (95%) or more, may agree that the General Common Elements
are obsolete and that the same should be renewed or reconstructed.

 

Bosch consistently paid maintenance fees for common expenses, such as
lawn care and gate repair, through monthly assessments after he purchased the units.
 Bosch also paid special assessments as
needed for roofing repairs and painting.

In March 2006, the Open Pines board met and discussed a special
assessment for replacing the siding in the complex.  The condominium unit owners who attended this
meeting did not object to the proposed special assessment.  The board approved a plan to replace the
siding of all units in the complex.  The
special assessment went into effect in May 2006.  It is undisputed that the May 2006 special
assessment did not have the prior written approval of the owners of the Open
Pines complex.

Bosch did not pay the special assessment for the months of June through
October of 2006.  After Open Pines
informed Bosch that it was pursuing foreclosure on his property due to his
failure to pay the special assessment, Bosch paid the November 2006 special
assessment.

Bosch sued, alleging that (1) Open Pines violated the Declaration when it
approved the special assessment without the prior written approval of 95% of the
owners of the complex and (2) he did not pay the special assessment
voluntarily.  He argued at trial that
Section 21 of the Declaration required the prior written consent of 95% of
owners to complete projects within the complex that were not basic monthly
maintenance.  Bosch also argued at trial
that he did not pay the special assessments voluntarily, but he was forced to
do so to avoid foreclosure on his units.

At trial, Bosch testified that the complex did not need new siding and it
could have benefited to the same degree by completing a few repairs and
painting.  Bosch testified that his
payment of the special assessment was not voluntary, that he protested when he
paid the assessment, that he sued because he did not want his units to be
foreclosed upon, and that he felt filing a lawsuit was “the only way to defend
himself.”  He further testified that he purposefully
did not pay the assessments until he received foreclosure notices on his units.

Bruce Menzer, a member of the Open Pines Condominium Association,
testified that he owned ten units in the Open Pines complex, purchased between
1988 and 2003, that he had served on the board of that Association “off and on”
since becoming an owner, and that he served on the board in May 2006.  He testified that Bosch was present at the March
7, 2006 board meeting during which the board discussed the special assessment
for siding.  He further testified that
there was no opposition to the proposal for the special assessment, and he specifically
testified that Bosch did not object.  He
testified that windows, balconies, and doors were falling off of units due to
the fact that the siding was “rotted out in some places” and that recipients of
government subsidization of housing costs through the Section 8 program[2]
were being turned down for assistance to live at Open Pines because of the
condition of “the exterior of the building.”

The jury was asked to determine whether Open Pines violated the
Declaration.  The jury charge on this
issue read:

Did Open Pines Condominium Owners Association, Inc. fail to comply with
the Condominium Declaration for the Open Pines Condominium Owners Association,
Inc.? 

 

You are hereby instructed that the May 2006 special assessment is
presumed reasonable unless you determine by a preponderance of the evidence
that the exercise of discretionary authority was arbitrary, capricious, or
discriminatory.

 

The jury
answered “no” to this question.

The jury was also asked to determine whether Bosch made the special
assessment payments voluntarily.  The
jury charge on this issue read:

Did Yigal Bosch and Transamerica Corp. of Houston voluntarily pay the May
2006 special assessment to Open Pines Condominium Owners Association, Inc.?

 

You are instructed that a party cannot recover as damages money that it
voluntarily paid with full knowledge of all the facts and without fraud,
deception, duress, or coercion by the defendant.  Coercion includes pressure to take action to
avoid consequential harms before uncertainty as to contractual obligations can
be resolved.

 

The jury
answered “yes” to this question.

Thus, the jury found that Open Pines did not breach the contract as set
forth in the Declaration and that Bosch paid the special assessments
voluntarily.  Bosch did not move for a
new trial.

 

 

Violation of the
Declaration

In his first issue, Bosch complains that Open Pines violated the
Declaration when it approved the special assessment without prior written
approval from 95% of the owners of the complex. 
We construe this as a challenge to the legal sufficiency of the evidence
to support the jury’s finding that Open Pines did not violate the Declaration
by making the assessment to pay for the siding.[3]

With legal sufficiency complaints, the starting point for
our analysis when, as here, there is no complaint of charge error, is the
charge actually submitted to the jury.  Osterberg
v. Peca, 12 S.W.3d 31, 55
(Tex. 2000).

The jury was asked to determine whether Open Pines violated the
Declaration:

Did Open Pines Condominium Owners Association, Inc. fail to comply with
the Condominium Declaration for the Open Pines Condominium Owners Association,
Inc.? 

 

You are hereby instructed that the May 2006 special assessment is
presumed reasonable unless you determine by a preponderance of the evidence
that the exercise of discretionary authority was arbitrary, capricious, or
discriminatory.

 

The jury
explicitly found that Open Pines did not fail to comply with the Declaration
when it answered “no” to question one.

 

A.      Standard
of Review

In reviewing a challenge to the legal sufficiency of the
evidence, we determine whether the evidence would enable reasonable and
fair-minded people to reach the verdict under review.  City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).  In conducting this review, we credit favorable
evidence if reasonable jurors could and disregard contrary evidence unless
reasonable jurors could not.  Id.

We consider the evidence in the light most favorable to the
finding under review and indulge every reasonable inference that would support
this finding. Id. at 822.  We hold
that the evidence is legally insufficient only if (1) the record reveals a
complete absence of evidence of a vital fact, (2) the court is barred by rules
of law or of evidence from giving weight to the only evidence offered to prove
a vital fact, (3) the evidence offered to prove a vital fact is no more than a
mere scintilla, or (4) the evidence conclusively establishes the opposite of
the vital fact.  Id. at 810.  If there is more than a scintilla of evidence
to support the jury finding, the legal insufficiency challenge fails.  Appraisal
Review Bd. of El Paso County Cent. Appraisal Dist. v. Fisher, 88 S.W.3d
807, 815 (Tex. App.—El Paso 2002, pet. denied) (citing Stafford v. Stafford, 726 S.W.2d 14, 16 (Tex. 1987)).  Furthermore, “[w]hen a party attacks the legal sufficiency of an adverse finding on an
issue on which [he] has the burden of proof, [he] must demonstrate on appeal
that the evidence establishes, as a matter of law, all vital facts in support
of the issue.”  Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001) (per
curiam).  When reviewing evidence in a light favorable to the jury
verdict, we assume “jurors made all inferences in favor of their verdict if
reasonable minds could, and disregard all other inferences.”  Wilson, 168 S.W.3d at 821.

          B.      Analysis

          Condominium owners are required to pay their pro rata share of “the
expenses to administer the condominium regime and to maintain and repair the
general common elements” of the condominium complex.  Tex.
Prop. Code Ann. § 81.204(a)(1) (Vernon 2007).  “Owners of condominium units accept the terms,
conditions, and restrictions in the condominium declaration by accepting deeds
to individual units.”  Daly v. River Oaks Place Council of
Co-Owners, 59 S.W.3d 416, 418 (Tex. App.—Houston [1st
Dist.] 2001, no pet.).  Owners implicitly
delegate authority to the condominium association when they enter the
condominium scheme.  Pooser v. Lovett Square Townhomes Owners’ Ass’n, Inc., 702 S.W.2d
226, 231–32 (Tex. App.—Houston [1st Dist.] 1985, writ ref’d n.r.e.).

In Inwood North Homeowners’ Association
v. Harris, the Texas Supreme Court held that maintenance assessments levied
to repair and improve the common areas of a subdivision met the requirements of
a restrictive covenant because they sufficiently touched and concerned the
land, and that the Declaration evidenced the intent of the parties to be bound
and specifically bound the parties, their successors and assigns.  Inwood N.
Homeowners’ Ass’n v. Harris, 736 S.W.2d 632, 635 (Tex. 1987).

The Declaration in this case also evidences the intent of
the parties to be bound and specifically binds the parties, their successors,
and assigns; therefore, the assessments levied by Open Pines meet the
requirements of a restrictive covenant.[4]
 See
id.

Section 14 of the
Declaration provides:

14. Assessments for Common Expenses.

(a) The Managing Agent or Board of Managers, as the case may be, shall
from time to time determine the cash requirements necessary to provide for the
payment of all estimated expenses growing out of or connected with the
ownership, maintenance, and operation of the Property. . . .  After determining such cash requirements, the
Managing Agent or Board of Managers shall establish monthly assessments based
thereupon, which assessment shall be paid by each Owner as hereinafter
provided.

 

A rational jury could have determined
that the costs associated with repairing the siding were “expenses growing out
of or connected with the ownership, maintenance, and operation of the Property”
and thus that the board was permitted by section 14 to “establish monthly
assessments based thereupon.” 
Furthermore, the jury could have concluded that replacement of the
siding was a “common expense” based on the definition in the Declaration, which
stated that common expenses included “expenses
of . . . maintenance, repair, or replacement of the General Common Elements and
Limited Common Elements.”  Section
14 does not contain any provisions requiring 95% of the owners to approve the
assessment.

During trial, the jury
heard evidence that the board of managers determined that the siding was in
disrepair and needed to be replaced.  The
board subsequently approved the special assessment for the common expense of
replacing the siding.  Thus, there is
more than a scintilla of evidence supporting the jury’s finding that Open Pines
did not violate the declaration.  See
Wilson, 168 S.W.3d at 810; Fisher, 88 S.W.3d at 815.

Bosch relies on section 21 of the Declaration in arguing that the
Declaration required a vote and prior written approval of 95% of the
condominium owners for a special assessment to fund major work on the common
area.  The Declaration provides for
special assessments in Section 21:

21. Reconstruction of General Common Elements. The Owners
representing an aggregate ownership interest in the General Common Elements of
ninety-five percent (95%) or more, may agree that the General Common Elements
are obsolete and that the same should be renewed or reconstructed.

 

Bosch argues
that this section “clearly set[s] the requirement of a vote when a major
replacement of the common area is to be done.” 
We disagree.  Section 21, by its
plain language, applies to action taken by “[t]he Owners representing an
aggregate ownership interest in the General Common Elements,” not to actions taken
by the board of managers.

Bosch also argues that Section 14, on which Open Pines relies, “does not
delegate any authority to the board to impose special assessment[s].”  As we have already discussed, Section 14 of
the Declaration provides for the board to pay for “all estimated expenses
growing out of or connected with the ownership, maintenance, and operation of
the Property” through monthly assessments, and the jury could have reasonably
concluded that the assessment for replacing the siding was such an expense.

Bosch further argues that the amount of the special assessment was
unreasonable and that the high amount of the special assessment prevents the
board from assessing these expenses without prior approval of the owners.  Finally, he argues that that the special
assessment was discriminatory.  In his
reply brief, Bosch notes that because two of the board members “live on
property they are the ones to benefit from the expenditure, not the rest of the
owners.”  Bosch argues that the special
assessment did not increase the value of his property because the cost of
repair exceeds the amount for which he can rent his units.  The jury impliedly found, by answering that
Open Pines did not violate the Declaration, that the special assessment
approved by the board was reasonable.

The “exercise of discretionary authority by a property
owners’ association . . . concerning a restrictive covenant
is presumed reasonable unless the court determines by a preponderance of the
evidence that the exercise of discretionary authority was arbitrary,
capricious, or discriminatory.”  Tex. Prop. Code Ann. § 202.004(a)
(Vernon 2007).  Because the unobjected-to
charge instructed the jury to presume that the special assessment was
reasonable, Bosch had the burden of proof at trial to demonstrate that the
special assessment was arbitrary, capricious, or discriminatory.  See id; Osterberg, 12 S.W.3d at 55.  

Regarding Bosch’s argument that the assessment was unreasonable due to
the high cost of the assessment, we observe that Section 14 does not set
limitations on the size of monthly assessments and it specifically names
“repairs and renovations” and “all other costs and expenses relating to such
maintenance, ownership, and operation” as potential expenses that qualify as
common expenses.  See Pooser,
702 S.W.2d at 231 (holding that owners’ “association was vested with considerable discretion . . . to
determine the necessary expenses for the operation of the condominium project”
and did not act unreasonably in requiring owners to pay past due assessments
even when some offsets had not been satisfied); San Antonio Villa Del Sol Homeowners Ass’n
v. Miller, 761 S.W.2d 460,
464 (Tex. App.—San Antonio 1988, no writ) (holding that condominium board acted
reasonably when it ordered pipes replaced and levied special assessment without
prior membership approval).

Regarding Bosch’s argument that the assessment was unreasonable because
it was discriminatory, we observe that Mezner testified that windows, balconies,
and doors were falling off of units due to the fact that the siding was “rotted
out in some places.”  In addition, Mezner
testified that Section 8 recipients were getting turned down for assistance to
live at Open Pines because of the condition of “the exterior of the building.”  Based on Mezner’s testimony, a rational jury
could have found that the board’s action to replace the siding was not discriminatory
because it applied to every unit in the complex and affected each owner through
the same pro rata interest-measuring scheme and that all owners, whether they
lived in the complex or owned the units as investment properties, would benefit
from improving the condition of the property.

A rational jury also could have disagreed with Bosch’s argument that the
replacement of the siding decreased the value of his units because, as Bosch
testified, tenants living in the units would benefit and, as a result, would
rent Bosch’s units, indirectly benefiting Bosch.  Although Bosch testified that he would have made
a different business decision regarding whether to replace the siding or repair
portions of the siding and repaint, the decision to replace the siding could
reasonably be understood as not discriminating against Bosch.  See Pooser, 702 S.W.2d at 231 (affirming trial
court’s conclusion that “[s]o long as a condominium association or board of
managers has acted reasonably in the exercise of its duties under the
condominium declaration, a condominium owner is not entitled to recover
damages, or to avoid maintenance assessments, because of his disagreement with
the actions taken by the association or board.”).  A
rational jury could have determined that the special assessment was reasonable
by believing the testimony of Mezner and disbelieving the testimony of Bosch.  See
Gabriel v. Lovewell, 164 S.W.3d 835, 848 (Tex. App.—Texarkana 2005, no pet.)
(holding that jury’s verdict was based on legally sufficient evidence when it
went against testimony of expert witness because credibility of this testimony
was diminished by other witnesses’ testimony and jury could “consider
all . . . evidence in light of their own general experience
and common sense”).

These arguments failed to demonstrate that the evidence establishes, as a
matter of law, all vital facts in support of Bosch’s issue.  See Francis,
46 S.W.3d at 241.

     We overrule Bosch’s first
issue.

Payment of Special
Assessments

Bosch argues, in his second issue, that he did not pay the special
assessment voluntarily and is therefore entitled to recover the amount that he
paid for the assessment as damages.  He
argues that the fact that he did not pay the assessments until he was threatened
with foreclosure and he protested paying the assessments demonstrates that the
threat of foreclosure coerced him into paying the special assessments.

The jury was asked to determine whether Bosch made the special assessment
payments voluntarily:

Did Yigal Bosch and Transamerica Corp. of Houston voluntarily pay the May
2006 special assessment to Open Pines Condominium Owners Association, Inc.?

 

You are instructed that a party cannot recover as damages money that it
voluntarily paid with full knowledge of all the facts and without fraud,
deception, duress, or coercion by the defendant.  Coercion includes pressure to take action to
avoid consequential harms before uncertainty as to contractual obligations can
be resolved.

 

The jury explicitly found that Bosch paid the special assessments
voluntarily by answering “yes” to this question.  In doing so, the jury impliedly found that
Bosch was not coerced into paying the special assessments, nor did he pay the
assessments under duress. 

In general, money “voluntarily paid with full knowledge of all the facts
and without fraud, deception, duress[,] or coercion cannot be received back
[even if] it was paid upon a void or illegal demand or upon a claim which had
no foundation in fact. . . .”  Tyler v.
Tyler, 742 S.W.2d 740, 743 (Tex. App.—Houston [14th Dist.] 1987, writ
denied); see Spring Branch Bank v.
Mengden, 628 S.W.2d 130, 134 (Tex. App.—Houston [14th Dist.] 1981, writ
ref’d n.r.e.).  For a payment to be made
under duress, the party demanding payment must (1) threaten an action that the
demanding party does not have a legal right to do, (2) act in a manner that
imposes an illegal exaction or some fault or deception, (3) the threat
must be imminent, and (4) the threat must destroy the free agency of the party
making the payment without the present means of protection.  Mengden,
628 S.W.2d at 134.  “It is never duress
to threaten to do that which a party has a legal right to do.”  Id.
at 134–35 (citing Ulmer v. Ulmer, 162
S.W.2d 944, 947 (Tex. 1942)); see Ward v.
Scarborough, 236 S.W. 434, 437 (Tex. 1922).  Whether duress exists is determined by
reviewing the acts or conduct of the party accused of duress; the emotions of
the paying party do not suffice to create duress.  Williams
v. Jackson, No. 01-07-00850-CV, 2008 WL 4837484, at *2 (Tex. App.—Houston
[1st Dist.] Nov. 6, 2008, no pet.) (mem. op.).

Bosch testified that he was not misled as to the amount or purpose of the
special assessment and penalties that he paid; therefore, neither fraud nor
deception applies to this case.  Furthermore, the evidence at trial indicated
that Bosch had full knowledge of all the facts. 
Bosch testified to working in the commercial real estate industry for
the past twenty-eight years and to owning more than one hundred properties in
Houston.  When questioned about paying
the special assessment, Bosch testified that he “filled out checks” himself for
each individual unit, and dated, entered the amount, and signed each check.

Bosch argues that the threat of foreclosure constituted duress or
coercion forcing him to pay the assessment. 
However, the evidence at trial showed that Bosch was on notice that
foreclosure on his units was a potential, legally valid consequence of not
paying the special assessment.  Section
14 of the Declaration stated that “lien[s] for payment of common expenses . . .
may be enforced by foreclosure in like manner as a mortgage on real property.”  Therefore, the threat of foreclosure in this
case did not constitute duress or coercion.  See Mengden, 628 S.W.2d at 134–35 (stating
that “It is never duress to threaten to do that which a party has a legal right
to do.”); see also Villa del Sol, 761 S.W.2d at 464–65
(holding that association acted within its authority when it cut off owner’s
utilities because owner was in violation of declaration by not paying his
monthly maintenance fee and declaration contained provision “permit[ting] the
Association to take action that will abate a condition that is clearly contrary
to the intent and meaning of the Bylaws”). 
Thus, Bosch has failed to establish as a matter of law all vital facts
in support of this issue because he did not present any evidence that Open
Pines threatened an action that it did not have a legal right to do or acted in
a manner that imposed an illegal exaction or some fault or deception.  See Francis,
46 S.W.3d at 241 (party who bears burden of proof at trial must demonstrate on
appeal that evidence establishes, as a matter of law, all vital facts
supporting issue); Mengden, 628
S.W.2d at 134 (providing elements that claimant must establish to recover
payment allegedly made under duress).

Thus, a rational jury could have found that Bosch understood the
consequences of signing the checks, and chose to do so outside the force of
coercion.

We overrule Bosch’s second issue.

CONCLUSION

We affirm the
judgment of the trial court.

 

 

Evelyn V. Keyes            

Justice                                     

 

                   

Panel
consists of Justices Keyes, Higley, and Bland.











[1]           Bosch
is president of Transamerica Corporation.





[2]           The
government provides partial or full subsidization of housing costs for
individuals who qualify for the Section 8 program.  Rental property must meet certain quality
standards for owners to rent their property to Section 8 recipients.





[3]           Bosch
does not articulate a factual sufficiency challenge, and did not preserve an
argument of factual sufficiency because he did not move for a new trial. See Tex. R. Civ. P. 324(b)(2).





[4]           Condominium
Declaration for Open Pines, para. 4, reads: “NOW, THEREFORE, Developer does
hereby publish and declare that the following terms, covenants, restrictions,
limitations, conditions, easements, uses, and obligations shall constitute
covenants to run with the land and shall be a burden and benefit to the
Developer, its successors and assigns and any person acquiring or owning an
interest in such property and improvements, together with their grantees,
successors, heirs, executors, administrators, devisees and assigns.”