**Robert B. BARNHILL, Appellant,**

v.

**Bill MOORE, Appellee.**

No. 1962.

Court of Appeals of Texas, Corpus Christi.

March 4, 1982.

Joe E. Griffith, Crockett, for appellant.

W. T. McNeil, Edna, for appellee.

Before NYE, C. J., and YOUNG and GONZALEZ, JJ.

## OPINION

NYE, Chief Justice.

This is an appeal in a breach of a written contract suit. Robert P. Barnhill, appellant, had a contract to clear some land that was to be used for a dam project. Bill Moore, plaintiff below and appellee herein, entered into a contract whereby he paid appellant for the right to remove the marketable timber. After appellee had cut the marketable timber from approximately two-thirds (⅔) of the land in question, he was advised by an engineer for the Department of Interior not to cut in a certain area until boundary lines for a park site had been established. When the lines were established, appellant attempted to locate appellee but was unable to do so. In order to complete the clearing project on schedule, appellant cleared the land himself. After a jury trial, appellee was awarded Four Thousand Dollars ($4,000.00) in damages. We reverse and render.

We note at the outset that appellee failed to file a brief in this case. We, therefore, accept the facts as set out by appellant in his brief. Tex.R.Civ.P. 419, *Kroger Co. v. Benavides*, 486 S.W.2d 877 (Tex.Civ.App.—Corpus Christi 1972, no writ).

The contract in question reads as follows:

"THE STATE OF TEXAS
COUNTY OF JACKSON

This AGREEMENT by and between Robert P. Barnhill, hereinafter called "Contractor", and Bill Moore, hereinafter called "Sub-Contractor", WITNESSETH:

## I.

Contractor has heretofore entered into a Contract with the Bureau of Reclamation whereby he is to clear the timber along and adjacent to the Navidad River between Texana Road and Haynes Road in Jackson County, Texas, said clearing to be done in connection with the Palmetto Bend Project.

Contractor and Sub-Contractor have agreed that Sub-Contractor shall cut and remove all commercial timber within the area to be cleared by Contractor.

In consideration for the right to remove such timber, Sub-Contractor has paid to Contractor the sum of $25,000.00, the receipt of which is hereby acknowledged by Contractor.

Sub-Contractor further agrees:

1. That no timber shall be cut and removed above the 44 foot elevation contour along the Navidad River.

2. No timber shall be cut before the elevation stakes are set by the Department of Interior.

3. To make a diligent effort to have all timber cut and removed ahead of Contractor's clearing operations in order not to interfere with same.

WITNESS the signature of the parties in duplicate originals this 9th day of March, 1976.

> signed Robert P. Barnhill
> Robert P. Barnhill
> Contractor
> signed Bill Moore
> Bill Moore
> SUB–CONTRACTOR"

This contract was prepared by appellee, and the land consisted of approximately Five Thousand Seven Hundred (5,700) acres. Appellant was obligated to clear the land on a certain schedule.

Appellee moved on to the land and began to produce logs which he sold as railroad ties and veneer logs. In July 1976, after appellee had removed the marketable timber from approximately two-thirds (⅔) of the land in question, a U. S. Bureau of Reclamation engineer instructed appellee not to cut in a certain area until the boundaries of the future park site were staked out. Appellee continued cutting in other areas and some time thereafter appellant and appellee had a conversation wherein appellant told appellee that he would call appellee when the government completed staking out the park site. In September 1976, appellee moved his mill from the site and during the next seven months on two occasions contacted appellant to check to see whether the government had completed locating the boundary lines so that he could resume the removal of the balance of the timber. In February 1977, appellant was notified that the government had completed their work, and he was unsuccessful in contacting appellee. Appellant being pressured to complete the clearing project on schedule, and being unable to locate appellee, proceeded to clear the land himself. Appellee not having cut all the tall trees made appellant's clearing operations more cumbersome, expensive and time consuming. Appellant bulldozed, piled and burned all of the trees in the clearing process.

Appellant asserts fifteen points of error. Points of error 6, 7, 8, 9, 10, 11, 12, 13 and 14 relate to alleged errors of the court in submitting special issues number one and two. They are as follows:

### "SPECIAL ISSUE NO. ONE

Do you find from a preponderance of the evidence defendant failed to timely notify plaintiff he could resume removal of timber, as contemplated under the terms of the parties' contract?

Answer 'Yes' or 'No.'  Yes

If you have answered Special Issue No. One "Yes" and only in such event, then answer Special Issue No. Two.

### SPECIAL ISSUE NO. TWO

Do you find that such failure by the Defendant deprived Plaintiff of the opportunity to remove timber, as contemplated, under the terms of the parties' contract?

Answer 'Yes' or 'No.'  Yes"

The alleged errors in the submission of these two issues are that they presume an oral agreement between the parties regarding notification; that there is no consideration to support such an oral agreement; that the issues presume a legal duty on the part of the appellant to notify appellee to *resume the removal of timber, when in fact* no such legal duty existed under the terms of the written agreement; that appellee did not plead ambiguity in the written agreement; that appellee did not plead any oral modification of the written agreement; and that there was no evidence and insufficient evidence to support the submission of these issues.

 To modify an existing contract, new consideration is required and there is a further requirement that not only must the new consideration be proven, it must be supported by "proper pleadings." See *R. L. Cox & Co. v. J. H. Markham*, 39 Tex.Civ. App. 637, 87 S.W. 1163 (1905, no writ); *Terrell, Atkins and Harvin v. Proctor*, 172 S.W. 996 (Tex.Civ.App.—San Antonio 1915, no writ). Furthermore, if a party contends that a written agreement is ambiguous, it too must be specifically pled. *Skyline Furniture, Inc. v. K. P. Gifford*, 433 S.W.2d 950, 954 (Tex.Civ.App.—El Paso 1968, no writ).

In *Universal Credit Company v. Cole*, 146 S.W.2d 222 (Tex.Civ.App.—Amarillo 1940, no writ), the court after stating that a written contract could be modified by a subsequent oral contract stated:

> "This does not mean; however, that such a contract may be changed or modified by mere idle conversation. The rule is well established that, in order to modify or materially change the terms of a valid contract by parole, the agreement, in order to be legal and binding upon the party thereto, must be based upon a consideration. Otherwise, it is merely a nudum pactum and is afflicted with all of the infirmities of contracts or agreements generally that lack the essential element of a consideration. If, therefore, the agreement was made as alleged by appellee and shown by his testimony, it was not binding upon appellant and its breach could not inflict any injury upon appellee for which he would be entitled to recover.

> . . . We find in the record no allegation or proof of any kind that even suggests a consideration for the alleged oral contract of extension and it must follow that, even if the agreement was made as alleged by appellee, it was of no legal force."

In the case at bar, appellee sued on the basis of the written contract. The contract is silent regarding appellant's duty to notify appellee to resume cutting, under the circumstances of this case. Appellee did not plead that the written contract was ambiguous, nor that it had been modified by an oral agreement. Therefore, appellant's statement that he would notify appellee was "idle conversation" and did not rise to the level of an enforceable contract for the reasons stated above.

The judgment is reversed and a take nothing judgment is rendered.