SAN ANTONIO VILLA DEL SOL
HOMEOWNERS
ASSOCIATION, Appellants,

v.

William B. MILLER, Appellee.

No. 04–87–00637–CV.

Court of Appeals of Texas,
San Antonio.

Nov. 9, 1988.

Gregory P. Seale, Ausburn, Astoria & Seale, San Antonio, for appellants.

William B. Miller, San Antonio, pro se.

Before ESQUIVEL, CANTU and DIAL, JJ.

## OPINION

DIAL, Justice.

This is an appeal arising from a suit filed by appellee, William B. Miller, against San Antonio Villa Del Sol Homeowners Association, appellant in this matter ("Association"), the Association's Board of Directors, Marie Gates, Hilda Hewitt, and David Acosta ("The Board"), and Dorothy Wearmouth, Property Manager of the Association. In his suit, Miller claimed that the defendants harassed him by turning off a portion of his utilities. The Association counterclaimed to collect unpaid monthly assessments and a special assessment made in 1984.

Following a non-jury trial, the court held that the 1984 assessment was not valid and that the defendants lacked the authority to terminate Miller's utilities. The court further held that Miller owed $3,604.51 in monthly maintenance fees, to be offset by $600.00, incurred as a result of moving into another apartment. Finally, the trial court denied the Association its request for $313.00 of accrued interest on Miller's overdue payments. Appellant comes before this Court to challenge the trial court's findings that the 1984 special assessment was illegal and that the Association is not entitled to prejudgment interest.

Pursuant to the Condominium Declaration, the Association exists to maintain, repair, and replace the common elements of the San Antonio Villa Del Sol and acts through its Board of Directors. Prior to 1984 and in compliance with the Declaration, Miller purchased a condominium and acquired a .0076 interest in its common elements.

On November 26, 1984, following the discovery of a gas leak, the property manager contacted E.L. Smith Plumbing to inspect the premises. The inspection revealed that the gas pipelines needed replacement, because the required major repairs would not last long.

The Board solicited bids for the pipeline project and accepted E.L. Smith's bid of $61,500.00. In addition, the Board also voted to specially assess the owners for the plumbing services and goods related to the gas lines.

Miller claimed the Board's action was illegal and refused to pay his share of the assessment, $454.86. In December, 1984, Miller stopped paying his monthly maintenance fee of $117.37, which goes toward such common expenses as garbage collection, grounds upkeep, gas, water and security. In November, 1985, after filing a lien on Miller's unit and bringing suit against him, the Association notified him that if his assessments were not paid, his gas and

water would be disconnected. Miller did not respond, and the Association partially disconnected his gas and water. As of the date of trial, Miller owed $3,604.51 in monthly assessments and $313.81 in accrued interest.

The trial court ruled that the 1984 special assessment was illegal and, therefore, appellant was not entitled to the $454.86 from appellee. The Association was, however, entitled to $3,604.51 in back payments from Miller less $600.00 moving expenses incurred by Miller. Finally, the trial court denied appellant's request for prejudgment interest. Appellant advances ten points of error challenging the trial court's findings concerning prejudgment interest, the special assessment and the $600.00 offset in favor of Miller. Appellee has failed to file a brief.

■ Before discussing appellant's points of error, we should address appellee's failure to file a brief. Under the former Rule 419, the court could accept any statement in appellant's original brief that was not challenged by appellee. *Men's Wearhouse v. Helms*, 682 S.W.2d 429, 430 (Tex.App.— Houston [1st Dist.] 1984, writ ref'd n.r.e.). This rule did not apply, however, when the trial court filed specific findings of fact that were sufficient to support the judgment. *Id.*

While the new rules state that the appellant's failure to file a brief may result in the court's presumption that the appellee's presentation of the facts is correct, the rules make no such analogous provision for the appellee's failure to file a brief. *See* TEX.R.APP.P. 74(m).[1] In 1987, the Court of Appeals in El Paso stated that it was compelled to accept appellant's rendition of the facts upon appellee's failure to file a brief. The court, however, relied on a 1982 case, which applied the old rule. *Navistar Int'l Corp. v. Valles*, 740 S.W.2d 4, 6 (Tex. App.—El Paso 1987, no writ), *citing Barnhill v. Moore*, 630 S.W.2d 817 (Tex.App.— Corpus Christi 1982, no writ). Therefore, despite appellee's failure to file a brief, we have examined the record on factual and legal sufficiency points, and we address them below.

■ In its first point of error, appellant contends that the trial court erred by failing to award prejudgment interest on the monthly maintenance fees. At trial, Miller admitted that he had not paid his monthly maintenance fees since December, 1984. The trial court found that Miller was liable to appellant for these fees totalling $6,304.51 but denied appellant his request for prejudgment interest. It appears from the record that the trial court, in denying the award for prejudgment interest, factored into consideration that Miller acted in good faith when he failed to make his monthly payments.

■ Prejudgment interest is recoverable as a matter of right when an ascertainable sum of money is determined to have been due and payable at a definite time prior to judgment. *Miner–Dederick Constr. Corp. v. Mid–County Rental Serv.*, 603 S.W.2d 193, 200 (Tex.1980); *Howze v. Surety Corp.*, 584 S.W.2d 263, 268 (Tex.1979); *Ceco Corp. v. Steves Sash & Door Co.*, 714 S.W.2d 322, 328 (Tex.App.—San Antonio 1986), rev'd in part on other grounds, 751 S.W.2d 473 (Tex.1988). The trial court does not have discretion to increase or reduce prejudgment interest. *Matthews v. DeSoto*, 721 S.W.2d 286, 287 (Tex.1986).

In this case, the trial court determined that Miller owed the Association $3,604.51 less $600 offset. The contract specifies a rate of interest of 10% per annum. We reverse the trial court and remand the case with instructions that the trial court calculate the pre-judgment interest. TEX.REV. CIV.STAT.ANN. art. 5069–1.05, § 1(1) (Vernon Supp.1988).

In points two through six, appellant challenges the trial court's finding that the 1984 special assessment was illegal. In points two and three, appellant claims alternatively that there is no evidence or insufficient evidence to show that section 21.2 of the Condominium Declaration applies to this special assessment. Section 21.2 reads as follows:

1. *But see* TEX.R.APP.P. 74(f).

The Association, acting solely through the Board, may include in the regular assessments amounts to be used for the replacement of or addition to capital items or improvements in the Property. Such assessment for capital improvement or replacement shall in no event exceed 30% of the common assessment for the operation and maintenance of the Property without the assessment having been first voted on and approved by two-thirds (⅔) or more vote in percentage ownership interest of those present in person or by proxy at a meeting of the Association duly called for that purpose.

The gist of appellant's argument in points two and three is that there is no evidence or insufficient evidence to show that the replacement of the gas pipeline is a capital item or capital improvement. In addressing a no evidence point, we must consider only the evidence and inferences tending to support the finding. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). On the other hand, when we are deciding an insufficient evidence point, we consider all the evidence and affirm the point only if the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming. *Id.*

■ At trial, Mr. Michaud, the plumber who performed the work in question, testified that the condition of the gas pipes was very bad, very dangerous and not feasible to repair. The pipes had to be replaced. This testimony provides us with sufficient evidence that the work performed could reasonably be classified as a capital improvement. Points two and three are overruled.

In points of error four and five, appellant alternatively contends that there is no evidence or insufficient evidence to support the finding that appellant did not reasonably judge the plumbing services and goods to be necessary to preserve and maintain the integrity of the common elements of the property. The thrust of appellant's argument concerns the applicability of section 21.3 of the Declaration, which sets forth two exceptions to section 21.2. Although appellant, pursuant to Rule 298,

requested an additional finding pertaining to reasonableness, the trial court declined to make such a finding. We infer from the brief that appellant's real complaint is the trial court's failure to make the requested finding.

■ The trial court's failure to comply with TEX.R.CIV.P. 298 concerning additional findings is not reversible if the requested finding is covered by and directly contrary to the original findings filed by the trial court. *Shelby Int'l., Inc. v. Wiener*, 563 S.W.2d 324, 328 (Tex.Civ.App.— Houston [1st Dist.] 1978, no writ); *Wentz v. Hancock*, 236 S.W.2d 175, 176 (Tex.Civ. App.—Austin 1951, writ ref'd). The trial court found that appellant violated section 21.2 of the Declaration. By making this finding, the trial court has impliedly rejected the application of the exceptions in section 21.3. Such a finding is in direct opposition to appellant's requested finding. Therefore, the trial court's failure to comply with appellant's request is not reversible error if the finding made is supported by the evidence. To determine the necessary evidentiary support, we must consider the concomitant arguments under point of error six.

In its sixth point of error, appellant contends that the trial court erred in concluding as a matter of law that the 1984 special assessment was invalid and thus of no force and effect. The trial court based its conclusion on its finding that the assessment by the Association violated section 21.2 of the Declaration. Appellant points out that section 21.3 of the Declaration sets forth the following exception to rule 21.2:

The 30% of the common assessment limitation provided at paragraph 21.2, above, shall not apply in connection with damage or destruction referred to in section 12 hereof or *to such structural alteration or capital additions to or capital improvements of the common elements as are necessary in the Board's reasonable judgment to preserve or maintain the integrity of the common elements of the property.* (emphasis added).

■ Therefore, if the Board reasonably believed its actions were necessary to preserve or maintain the integrity of the common elements, membership approval was not required. Because the trial court did not apply the 21.3 exception, it apparently concluded that the Association's actions were unreasonable.

The evidence was not disputed that after a gas leak was discovered, the property manager arranged for an inspection of the premises. The plumber who conducted the inspection advised that the most feasible way to handle the problem was to replace the gas pipes. The Board solicited bids for the job and accepted E.L. Smith's bid of $61,500.00. The reserve funds were insufficient to pay for the cost of the work; therefore, the Board voted to specially assess the homeowners for the services pertaining to the gas lines which were owned by the Association as common elements.

We find no evidence to suggest that the Association acted unreasonably when it levied the special assessment. In fact, the Association's actions comport in every way with reasonable behavior as set out in prior case law.

■ The reasonableness standard in this case must be measured in the context of the uniqueness of condominium living. *Pooser v. Lovett Square Townhomes Owners' Ass'n*, 702 S.W.2d 226, 231 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.); *Raymond v. Aquarius Condominium Owners Ass'n*, 662 S.W.2d 82, 89 (Tex.App.—Corpus Christi 1983, no writ). Each condominium owner relinquishes some degree of freedom of choice and agrees to subordinate some of his traditional ownership rights when he elects this type of ownership experience. The Association is vested with considerable discretion to determine the necessary expenses for the operation of the condominium project and to assess the owners' pro rata share of such common expenses. *Pooser*, 702 S.W.2d at 231; *Raymond*, 662 S.W.2d at 89.

Clearly, the Association complied with the reasonableness standard set out in *Pooser* and *Raymond*. Furthermore, there is no evidence that the Association acted unreasonably. Therefore, points of error four, five, and six are sustained.

■ In points of error seven through ten, appellant challenges the trial court's finding that the Association acted illegally and outside the scope of its authority when it disconnected Miller's utilities. In so doing, appellant also challenges the $600.00 offset awarded to Miller.

In *Raymond, supra,* a condominium owner also challenged the legality of an assessment by the owners' association. The court referred to two sections of the Texas Condominium Act: § 15, which states that no owner is exempt from contributing towards expenses for the common elements; and § 9, which states that by accepting an individual unit, a condominium owner accepts the terms, conditions and restrictions of the Condominium Declaration. *Raymond*, 662 S.W.2d at 87. In addition, the court cited paragraph 9 of the Condominium Declaration, which says that each unit owner "shall" pay his proportionate share of the common expenses. *Id.* The court concluded that the Board of Directors acted within the scope of its authority granted in the Bylaws. *Id.*

Similarly, in the case at bar, Miller has challenged the action of the Association. The record indicates that for eleven months, Miller had not paid his monthly maintenance fees but enjoyed the benefit of the maintenance services. At trial, Miller admitted that because he was not paying his maintenance fees, his neighbors in effect were paying his fees.

Section 5.2 of the Bylaws authorizes the Board to make assessments for common expenses, and section 5.6 gives the Association the rights and remedies contained in the Condominium Act and the Declaration to enforce the collection of these assessments. Section 6.2 states that the remedies available in the Bylaws are in addition to any other available remedies.

By failing to pay his monthly maintenance fees, Miller was in violation of section 21.1.1 of the Declaration. Section 6.1.1 of the Bylaws permits the Association to take action that will abate a condition that

is clearly contrary to the intent and meaning of the Bylaws. The record shows that the Association sent notice to Miller that if his assessments were not paid, the gas and water in his condominium would be disconnected. After Miller failed to respond, the Association partially disconnected his utilities.

Clearly, a condominium dweller who does not pay his share of the maintenance fee, admits that the other owners are in essence paying his way, and fails to respond to notice of disconnection is in violation of the meaning and intent of the Bylaws. The Association took appropriate action to abate this condition. Its actions were neither arbitrary nor capricious and fit squarely within the reasonableness standard set out in *Pooser* and *Raymond*. Therefore, we sustain points of error seven through ten, and in so doing we reverse the $600.00 offset in favor of Miller.

We reverse those portions of the judgment (1) that deny pre-judgment interest, (2) that hold that William B. Miller did not have to pay the special assessment in the amount of $454.86, and (3) that award William B. Miller an offset in the amount of $600.

We remand the case to the trial court with instructions to enter a judgment in conformity with this opinion.