OPINION
{¶ 1} Appellant October Hill Camplot Owners' Association ("October Hill") appeals the decision of the Holmes County Court that granted judgment, in the amount of $60 plus costs and interest, against Appellee Jack Bauman. The following facts give rise to this appeal.
 {¶ 2} On March 22, 2003, October Hill submitted, to appellee, an invoice for dues and utilities, in the amount of $723, due and payable by May 1, 2003. The invoice submitted to appellee contained the following language:
 {¶ 3} "This invoice is due and payable on May 1, 2003. If payment is not received in the OHCOA office by May 31, 2003 your electric meter is subject to disconnection and a reconnection charge of $60.00 plus any outstanding amount owed to October Hill Association must be paid before the meter is reinstated."
 {¶ 4} Appellee did not pay the invoice and on June 9, 2003, October Hill removed appellee's electric meter. On June 13, 2003, appellee paid the invoice as well as the $60 reconnection charge.
 {¶ 5} On August 21, 2003, appellee filed a complaint seeking reimbursement of the reconnection fee. The trial court heard this matter on October 22, 2003, and entered judgment in favor of appellee. October Hill timely filed a notice of appeal and sets forth the following assignment of error for our consideration:
 {¶ 6} "I. THE TRIAL COURT ERRED IN RULING THAT OCTOBER HILL WHICH IS A COMMUNITY ASSOCIATION OF CAMPLOT OWNERS AND A NON-PROFIT CORPORATION WAS NOT PERMITTED TO REMOVE ELECTRICAL SERVICE CONTROLLED BY THE ASSOCIATION FOR PLAINTIFF/APPELLEE'S FAILURE TO PAY ASSOCIATION MAINTENANCE FEES AS REQUIRED BY ARTICLE VI. OF THE ARTICLES OF INCORPORATION."
 I {¶ 7} In its sole assignment of error, October Hill maintains the trial court erred when it concluded it was not permitted to remove electrical service due to appellee's failure to pay maintenance fees. We agree.
 {¶ 8} At trial, appellee argued that, under Ohio law, October Hill was not permitted to disconnect his electric service for failure to pay dues and utilities. The trial court agreed with this conclusion. Tr. Oct. 22, 2003, at 3, 4. This is a correct statement of the law in the landlord-tenant relationship and such conduct, by a landlord, would be considered a constructive eviction.[1] See Nye v. Schuler (1959),110 Ohio App. 443.
 {¶ 9} However, in the case sub judice, a landlord-tenant relationship does not exist between October Hill and appellee. Rather, appellee is the owner of his camplot. He does not rent it from October Hill. Further, all electric meters are the property of October Hill and not the camplot owners. October Hill pays for the electricity and permits camplot owners to use it upon payment.
 {¶ 10} In support of its argument that it was permitted to disconnect appellee's electric, October Hill cites Article VI of the Articles of Incorporation which provides as follows:
 {¶ 11} "Section 3. Payment of Annual Assessment and Default. The amount of the assessment against each member shall be assessed by the association at a Board of Trustees meeting and such assessment shall be mailed to the members and shall be due and payable within thirty (30) days after assessment but said assessment may be collected at any time as provided in the Articles of Incorporation, the Code of Regulations and/or as directed by the Board of Trustees. Upon default of payment with such period of time, the assessment shall be a lien against the camplot(s) of the defaulting party, and the association shall be entitled to enforce the payment of said lien according to the laws of the State of Ohio and to take any other actions for collection from the defaulting parties. * * *"
 {¶ 12} Further, the Association Rules and Regulations provide, in pertinent part:
 {¶ 13} "29. ASSESSMENTS
 "NOTICE {¶ 14} "If any assessment, including but not limited to, dues, electric, and any late fees, legal fees and any other money owed to O.H.C.O.A. is not paid by due date, the electric meter may be pulled, use of common facilities denied, and an assessment of $60.00 will be added to your account and due immediately."
 {¶ 15} The above cited language was included on the invoice sent to appellee. Also in support of its sole assignment of error, October Hill cites the case of San Antonio Villa Del Sol Homeowners Assoc. v. Miller
(Tex.App. 1988), 761 S.W.2d 460, wherein a homeowner that belonged to an association argued the association could not disconnect his utilities for failure to pay his maintenance fee assessments. Id. at 461. The association's bylaws permitted the association to take such action. Id. at 464. In concluding the association took the proper action in partially disconnecting the homeowner's utilities, the court noted that "* * * a condominium dweller who does not pay his share of the maintenance fee, admits that the other owners are in essence paying his way, and failure to respond to a notice of disconnection is in violation of the meaning and intent of the Bylaws." Id. at 465.
 {¶ 16} Appellee also argues that he had a credit balance for his utilities and therefore, October Hill should not have disconnected his electric. A review of the invoice indicates October Hill billed appellee for dues and utilities. Therefore, the fact that appellee may have had a credit balance as to the utilities portion of the invoice does not negate the fact that appellee did not timely pay the dues portion of the invoice.
 {¶ 17} Based upon the above, we find October Hill acted within the parameters of its governing documents when it disconnected appellee's utilities. Therefore, we conclude the trial court erred when it ordered October Hill to reimburse appellee the reconnection fee of $60.
 {¶ 18} October Hill's sole assignment of error is sustained.
 {¶ 19} For the foregoing reasons, the judgment of the Holmes County Court, Holmes County, Ohio, is hereby reversed.
Wise, J., Gwin, P.J., and Farmer, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the County Court of Holmes County, Ohio, is reversed.
Costs assessed to Appellee Jake Bauman.
[1] In Nye v. Schuler, supra, the Fourth District Court of Appeals approved the following definition of "constructive eviction": "A constructive eviction is such a failure or interference on the part of the landlord with the intended enjoyment of the leased premises as to be of a substantial nature and so injurious to the tenant as to deprive him of the beneficial enjoyment of the leased premises." Id. at 445-446.