Richard D. DALY, Appellant,

v.

RIVER OAKS PLACE COUNCIL OF CO–OWNERS, Appellee.

No. 01–00–00894–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 25, 2001.

Charles L. Cotton, Holm, Bambace & Cotton, LLP, Houston, for appellant.

William S. Chesney, III, Frank, Elmore, Lievens, Chesney & Turet, LLP, Houston, for appellee.

Panel consists of Justices COHEN, JENNINGS, and DUGGAN.*

## OPINION ON SECOND MOTION FOR REHEARING

MURRY B. COHEN, Justice.

We grant appellant's rehearing motion, withdraw our opinion on rehearing dated August 9, 2001, and substitute this opinion in its stead.

River Oaks Place Council of Co–Owners ("The Association") sued Richard D. Daly

---

\* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

for contract breach and declaratory and injunctive relief. Daly counterclaimed for contract breach and declaratory relief. Based on the jury's verdict, the trial judge rendered judgment in favor of the Association and against Daly for contract breach, issued a permanent injunction against Daly, and awarded $26,996 in attorney's fees to the Association. We affirm in part and reverse in part and remand.

## Facts

Daly owns a condominium in River Oaks Place. In 1998, Daly installed an 18 inch Direct Broadcast Satellite dish on the roof of his single-level condominium. The Association told Daly to remove the dish because it was placed in a prohibited "common element" area. When Daly refused the request, the Association sued Daly for breaching the River Oaks Declaration of Condominium (the Declaration), which defined common elements to include "roof" and stated,

> [n]o owner shall install, attach, or hang or allow to be installed, attached or hung any equipment or wiring or electrical installations, television or radio transmitting or receiving antennas ... in or across any portion of any Common Elements....

Daly counterclaimed for a declaration that he could install the satellite dish in an area where he had a direct or indirect ownership interest and exclusive use or control.

## Analysis

In his first issue, Daly contends the evidence was legally insufficient to prove that he was bound by the Declaration because no evidence shows that his deed or other Association members' deeds restricted the use of satellite dishes. Specifically, Daly contends no deeds were offered into evidence and no evidence shows that the developer was (1) the owner of the land, (2) the common source of title, or (3) in the chain of title.

■ We follow the "no evidence" standard of review. *See Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex.1996). If there is more than a scintilla of probative evidence to support the finding, the no evidence challenge fails. *See id.*

■ Owners of condominium units accept the terms, conditions, and restrictions in the condominium's declaration by accepting deeds to individual units. *Pooser v. Lovett Square Townhomes Owners' Ass'n,* 702 S.W.2d 226, 230–31 (Tex.App.— Houston [1st Dist.] 1985, writ ref'd n.r.e.); *see also* TEX. PROP.CODE ANN. § 82.117(2), (4) (Vernon 1995).[1] Although Daly's deed was never admitted into evidence, Daly judicially admitted in his counterclaim for a declaratory judgment that he owned the condominium, and this admission was never controverted at trial. *See Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 905 (Tex.2000) (holding that a judicial admission is a clear, deliberate, and unequivocal statement that occurs when an assertion of fact is conclusively established in live pleadings, making the introduction of other pleadings or evidence unnecessary). Moreover, the Declaration's preamble, which was admitted into evidence, identifies the property's developer as a previous owner by stating,

1. "[T]he unit owner: ...
   (2) shall comply with the declaration, by-laws, and rules of the association, including any amendments; ...
   (4) is liable to the association for violations of the declaration, bylaws, or rules of the association, including any amendments, by the owner ... and for costs incurred by the association to obtain compliance, including attorney's fees whether or not suit is filed."

RIVER OAKS PLACE, a Texas general partnership between Wayne Duddleston, Inc. and 2 Realty, Inc., Texas corporations, *being the owner* of that tract of land more particularly described in Exhibit "A" attached hereto and made a part hereof for all purposes and the improvements thereon, and desiring to submit such land and improvements to the Texas Condominium Act ... for the purpose of establishing a condominium regime does hereby adopt, establish, promulgate and impress this Declaration of Condominium upon such land and improvements.

(Emphasis added.) Thus, we hold that the evidence was legally sufficient to prove that Daly owned the condominium and thus accepted the terms, conditions, and restrictions of the Declaration, which listed the property's developer as a previous owner.[2]

We overrule appellant's first issue.

**2.** Daly further contends that the trial judge erred by issuing the following jury instruction because the evidence was legally insufficient to support it:

> All owners of a condominium unit in River Oaks Place, including Richard D. Daly, are contractually bound to follow and comply with the terms and conditions of the DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS dated March 17, 1979.

Daly also contends that the trial judge erred by refusing Daly's requested jury question that stated, "Did River Oaks Place Council of Co Owners and Richard Daly agree to all of the terms contained within the Declaration of Covenants, Conditions and Restrictions for River Oaks Place?" We hold that the trial judge did not err for the same reasons on which we base our sufficiency holding.

**3.** The 1996 version of section 1.4000(a)(1) provided:

> Any restriction, including but not limited to any state or local law or regulation, including zoning, land-use, or building regulation, or any private covenant, *homeowners' association rule or similar restriction on property*

■ In his second issue, Daly alternatively contends he is entitled to use the satellite dish on his condominium roof as a matter of law because the 1996 version of 47 C.F.R. section 1.4000(a)(1) (the Regulation) prohibited the Association from restricting the satellite dish's use. 61 Fed. Reg. 46562 (Sept. 4, 1996) (now codified at 47 C.F.R. § 1.4000(a)(1)), *amended by* 63 Fed.Reg. 67422 (Dec. 7, 1998), *amended by* 63 Fed.Reg. 71036 (Dec. 23, 1998), *amended by* 64 Fed.Reg. 60726 (Nov. 8, 1999), *amended by* 66 Fed.Reg. 2322 (Jan. 11, 2001), *amended by* 66 Fed.Reg. 28841 (May 25, 2001).[3] Citing several Federal Communications Commission (FCC) opinions and rules, Daly contends the Regulation prevails because (1) the Association's maintenance duties did not affect his exclusive use of the roof;[4] (2) his exclusive use of the roof was all that was required, *i.e.*, exclusive ownership and control of the roof was unnecessary;[5] and (3) he main-

> *within the exclusive use or control of the antenna user* where the user has a direct or indirect ownership interest in the property, that impairs the installation, maintenance, or use of: An antenna that is designed to receive direct broadcast satellite service, including direct-to-home satellite services, that is one meter or less in diameter ... is prohibited, to the extent it so impairs, subject to paragraph (b) of this section.
> (Emphasis added.)

**4.** *See* 61 Fed.Reg. 46562 (Sept. 4, 1996) (now codified at 47 C.F.R. § 1.4000(a)(1)), *amended by* 63 Fed.Reg. 67422, 67427 (Dec. 7, 1998); *In re Lourie*, 13 F.C.C.R. 16,760, 1998 WL 317863 (F.C.C. June 16, 1998) (holding that the Regulation prevails even though the association has maintenance duties on the townhouse's exterior and chimney, where the antenna would be mounted).

**5.** *See In re Lourie*, 13 F.C.C.R. at 16,760. (holding that the Regulation prevails because the townhouse's owner has exclusive use of the townhouse and chimney).

tained exclusive use of the roof even if the roof was considered a common element.[6] We disagree.

Daly relies on *In re Lourie*, but that FCC opinion is not persuasive here because it analyzed the exclusive use of a townhouse, not a condominium unit. *See* 13 F.C.C.R. 16,760, 1998 WL 317863 (F.C.C. June 16, 1998). A townhouse owner generally has more exclusive use of his home than does a condominium owner. Thus, a townhouse owner will generally have exclusive use of his roof. That is not generally true of condominium owners, and it is not true in this case. The roof over Daly's condominium is not divided into sections for each owner's unit. The roof services the entire building, not just Daly's unit. Ruth Simmons, a member of the Association's board of directors, testified that one continuous roof covers all six units.

Recognizing the importance of this difference, the FCC has ruled:

> [W]e have generally concluded that the same regulations applicable to governmental restrictions should be applied to homeowners' association rules and private covenants, where the property is within the exclusive use or control of the antenna user and the user has a direct or indirect ownership interest in the property. We are unable to conclude on this record, however, that the same analysis applies *with regard to the placement of antennas on common areas or rental properties, property not within the exclusive control of a person with an ownership interest,* where a community association or landlord is legally responsible for maintenance and repair and can be liable for failure to perform its duties properly. Such situations raise different considerations.

*In the Matter of Preemption of Local Zoning Regulation of Satellite Earth Stations In the Matter of Implementation of Section 207 of the Telecommunications Act of 1996,* 11 F.C.C.R. 19,276, 1996 WL 444759 (F.C.C. Aug. 5, 1996) (No. IB 95–59, CS 96–83, FCC 96–328) (emphasis added). We agree that such situations raise different concerns. Daly's condominium roof is a common area where the community association is legally responsible for maintenance and repair and can be liable for failure to perform its duties properly.[7] Thus, we hold the Regulation does not prohibit the Association from restricting Daly's placement of the satellite dish on the roof because Daly did not have exclusive use or control of the roof.

We overrule Daly's second issue.

In his third issue, Daly contends the trial judge erred by refusing to submit the following jury question regarding Daly's counterclaim for declaratory relief to in-

---

**6.** *See* 63 Fed.Reg. at 71027, 71028 (Dec. 23, 1998) (noting that the Regulation covers common elements exclusively used by the condominium owner).

**7.** The Declaration provides:

> Section 3.1 *Authority to Manage.* ... The Council shall have the right, power and obligation to provide for the maintenance, repair, replacement, administration and operation of the Condominium and Condominium Regime as provided herein, in the By Laws and in the Rules....

> Section 3.8 *Administration of the Condominium.* The Council ... shall manage the business and affairs of the Condominium, and ... shall provide, perform, cause to be performed, maintained, acquired, contracted and paid for out of the Common Expense Fund the following: ...
>
> > (e) The cleaning, maintenance, repairing, reconstruction and replacement of the Common Elements as the Board shall determine is necessary, including the painting, repairing or replacement of roofs....

stall the satellite dish on a pole in his patio:

> Do you find from a preponderance of the evidence that Mr. Daly exclusively uses either the roof directly above Unit 198, the chimney for Unit 198, or the patio attached to Unit 198?
>
> Answer "Yes["] or "No" for each of the following:
>
> A. Roof ———
>
> B. Chimney ———
>
> C. Patio ———

Daly further contends the trial judge erred by finding the counterclaim contained no justiciable controversy because (1) Daly filed a summary judgment motion on his counterclaim, which was opposed by the Association and denied by the trial judge; (2) Daly testified that the Association refused to allow him to install the dish anywhere on his property; (3) even though the Declaration gave Daly the right to the exclusive use of his patio, the Association opposed the dish's installation on the patio; and (4) the Association's attempt to require Daly to indemnify and insure the Association before placing the dish on the patio's pole violated the Regulation.

The Association contends it wrote Daly a letter requesting (1) a description of the proposed installation to satisfy safety concerns and (2) indemnification. Simmons testified that Daly never responded either orally or in writing to the letter. Thus, the Association contends no justiciable controversy existed because the Association never had the opportunity to deny Daly permission to install the satellite dish on the patio.

■■■ A trial judge must submit a jury question if it is supported by some evidence, but may refuse to do so if it is not supported by any evidence. *See* Tex.R. Civ. P. 278; *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex.1992). Daly testified that (1) Simmons's testimony about Daly's not answering the letter was "patently false"; (2) he had responded to the Association's letter over the phone; and (3) he had told the Association he would do whatever it required in order to install the satellite dish.[8] In discussing this evidence, the Association's brief acknowledges that "Daly did make a claim that the Association had refused to allow Daly to install a DSS Satellite Dish/antenna anywhere on his property." Thus, we hold the trial judge erred by not submitting the jury question because some evidence existed to support it. *See Elbaor*, 845 S.W.2d at 243. The error was harmful because there was evidence from which the jury could have concluded that Daly had exclusive use of his patio.

On remand, we note that, even though Daly was plaintiff on the counterclaim, the Association will have the burden to prove that Daly did not have exclusive use of the patio. *See* 47 C.F.R. § 1.4000(g) (Jan. 11, 2001).[9] If the Association does not win a

---

8. Daly also testified that the Association should have had the duty to tell him what was acceptable, rather than requiring him to provide a proposal.

9. At the time suit was filed, the 1996 Regulation shifted the initial burden to the Association only in Commission proceedings, not judicial proceedings. *See* 61 Fed.Reg. 46562 (Sept. 4, 1996) (codified at 47 C.F.R. § 1.4000(e)), *amended by* 63 Fed.Reg. 67422 (Dec. 7, 1998), *amended by* 63 Fed.Reg. 71036

(Dec. 23, 1998), *amended by* 64 Fed.Reg. 60726 (Nov. 8, 1999), *amended by* 66 Fed. Reg. 2322 (Jan. 11, 2001), *amended by* 66 Fed.Reg. 28841 (May 25, 2001). While the suit was pending, the Regulation was amended to apply to "any proceeding," which we interpret to include judicial proceedings. *See* 63 Fed.Reg. 71036 (Dec. 23, 1998) (codified at 47 C.F.R. § 1.4000(f)), *amended by* 64 Fed. Reg. 60726 (Nov. 8, 1999), *amended by* 66 Fed.Reg. 2322 (Jan. 11, 2001), *amended by* 66 Fed.Reg. 28841(May 25, 2001). Because the

favorable finding of fact on that issue, then, in order to prevail, it will have the further burden to prove that the restriction "is necessary to accomplish a clearly defined safety objective. . . ." *See* 61 Fed. Reg. 46562 (Sept. 4, 1996) (codified at 47 C.F.R. § 1.4000(b)(1)), *amended by* 63 Fed.Reg. 67422 (Dec. 7, 1998), *amended by* 63 Fed.Reg. 71036 (Dec. 23, 1998), *amended by* 64 Fed.Reg. 60726 (Nov. 8, 1999), *amended by* 66 Fed.Reg. 2322 (Jan. 11, 2001), *amended by* 66 Fed.Reg. 28841 (May 25, 2001).[10]

We sustain Daly's third issue.

In his fourth issue, Daly contends the trial judge erred by awarding attorney's fees to the Association. Specifically, Daly contends the Regulation prohibits an award of attorney's fees by providing,

> *No attorney's fees* shall be collected or assessed and *no fine or other penalties* shall accrue against an antenna user *while a proceeding is pending to determine the validity of any restriction.* If a ruling is issued adverse to a viewer, the viewer shall be granted at least a *21–day grace period* in which to comply with the adverse ruling; and neither a

fine nor a penalty may be collected from the viewer if the viewer complies with the adverse ruling during this grace period, unless the proponent of the restriction demonstrates, *in the same proceeding which resulted in the adverse ruling, that the viewer's claim in the proceeding was frivolous.*

63 Fed.Reg. 71036 (Dec. 23, 1998) (codified at 47 C.F.R. § 1.4000(a)(3)), *amended by* 64 Fed.Reg. 60726 (Nov. 8, 1999), *amended by* 66 Fed.Reg. 2322 (Jan. 11, 2001), *amended by* 66 Fed.Reg. 28841 (May 25, 2001) (emphasis added).

The Association, however, contends the above version of the Regulation does not apply because it was not in effect when the lawsuit was filed on August 13, 1998. The Association contends the 1996 Regulation applies. That version did not mention "attorney's fees." Instead, it provided, *"No fine or other penalties* shall accrue against an antenna user while a proceeding is pending to determine the validity of any restriction." 61 Fed.Reg. 46562 (Sept. 4, 1996) (codified at 47 C.F.R. § 1.4000(a)(3)), *amended by* 63 Fed.Reg. 67422 (Dec. 7, 1998), *amended by* 63 Fed.Reg. 71036 (Dec. 23, 1998), *amended by* 64 Fed.Reg.

---

amendment was procedural, rather than substantive, we thus apply the amended Regulation (December 23, 1998) that took effect while this case was pending. *See Baker Hughes, Inc. v. Keco R. & D., Inc.*, 12 S.W.3d 1, 4 (Tex.1999); *Tyra v. City of Houston*, 822 S.W.2d 626, 627 n. 1 (Tex.1991). The December 23, 1998 version, which itself has twice been amended, is substantively the same as the Regulation's current version, which states,

> *In any proceeding* regarding the scope or interpretation of any provision of this section, *the burden* of demonstrating that a particular governmental or nongovernmental restriction complies with this section and does not impair the installation, maintenance, or use of devices used for over-the-air reception of video programming services or devices used to receive or transmit

fixed wireless signals *shall be on the party that seeks to impose or maintain the restriction.*

47 C.F.R. § 1.4000(g) (Jan. 11, 2001).

**10.** The 1996 version of section 1.4000(b)(1) provided:

> (b) Any restriction otherwise prohibited by paragraph (a) of this section is permitted if:
> (1) *It is necessary to accomplish a clearly defined safety objective* that is either stated in the text, preamble or legislative history of the restriction or described as applying to that restriction in a document that is readily available to antenna users, and would be applied to the extent practicable in a non-discriminatory manner. . . .

(emphasis added). We note that the 1996 version and the current version are substantively the same.

60726 (Nov. 8, 1999), *amended by* 66 Fed. Reg. 2322 (Jan. 11, 2001), *amended by* 66 Fed.Reg. 28841 (May 25, 2001) (emphasis added). Thus, we first must decide which version of section 1.4000 applies, the 1996 version which does not specifically prohibit attorney's fees, or the current version, which specifically prohibits them.

■ We hold the current version applies. An award of attorney's fees is a special remedy, and in this case, its sole source is Texas statutes.[11] TEX. CIV. PRAC. & REM.CODE ANN. § 38.001 (Vernon 1997); TEX. PROP.CODE ANN. §§ 82.117(4), 82.161 (Vernon 1995). What the legislature gives, it may take away, even while a plaintiff's judgment is pending on appeal.

It is almost universally recognized that if a statute giving a special remedy is repealed, without a saving clause in favor of pending suits, all suits must stop where the repeal finds them; and, if final relief has not been granted before the repeal goes into effect, it cannot be granted thereafter. A like general rule is that if a right to recover depends entirely upon statute, its repeal deprives the court of jurisdiction over the subject matter.

. . .

The repeal took away no right acquired by contract, but only destroyed the special remedial privilege afforded by subdivision (i).

. . .

[T]he suit, having been brought by a relator under special statutory authority, wholly collapsed when the statute authorizing its prosecution by the relator was repealed.

. . .

[T]he right sought to be upheld by him was one specially conferred by statute, and in no manner arose out of his contract of purchase; consequently, same was unquestionably taken away when the statute was repealed.

*Dickson v. Navarro County Levee Improvement Dist. No. 3,* 135 Tex. 95, 139 S.W.2d 257, 259–60 (1940); *accord Quick v. City of Austin,* 7 S.W.3d 109, 128–29 (Tex. 1998); *Knight v. Int'l Harvester Credit Corp.,* 627 S.W.2d 382, 384 (Tex.1982) (cause of action lost where statute repealed while suit pending); *Nat'l Carloading Corp. v. Phoenix–El Paso Exp.,* 142 Tex. 141, 176 S.W.2d 564, 568 (1943) (plaintiff's judgment based on federal statute is lost when statute is repealed pending appeal).

■ The Association contends that even if the current section 1.4000 applies to this dispute, its terms do not prohibit attorney's fees under these facts. The Association first contends the regulation does not prohibit attorney's fees because the trial judge ruled, in its favor, that despite the Regulation, the Association may bar the satellite dish from the roof. Second, the Association has not attempted to "assess" or "collect" attorney's fees while the proceeding was pending, as the Regulation prohibits. Third, the Association contends that the Regulation allows attorney's fees after the trial judge validated the restriction against satellite dishes because it provides, "[N]o attorney's fees shall be collected or assessed . . . while a proceeding is pending to determine the validity of any restriction." *See* 47 C.F.R. § 1.4000(a)(4). This is an argument that after the "proceeding" ended in the Association's favor, attorney's fees then become available. Finally, the Association contends it is entitled to attorney's fees under Texas law.

---

11. There is no contractual provision for attorney's fees, but if there were, it would be barred by section 1.4000, which preempts not just state and local law but also "any private covenant, homeowners' association rule, or similar restriction on property that impairs the installation of an antenna. . . ." *See* note 3 above.

*See* TEX. CIV. PRAC. & REM.CODE ANN. § 38.001 (Vernon 1997); TEX. PROP.CODE ANN. §§ 82.117(4), 82.161 (Vernon 1995). We disagree with each of these contentions.

First, under section 1.4000(a)(4), the Regulation limits the assessment and collection of attorney's fees in a proceeding to determine the validity of a restriction, *i.e.*, the type of proceeding involved here. *See* 47 C.F.R. § 1.4000(a)(4). This is true even if the restriction is valid, as the trial court ruled. Otherwise, both the 21–day grace period and the "frivolous" provision would be meaningless. *See In re Sadler*, CSR–5074–0, DA 98–1284, 1998 WL 347192 (July 1, 1998).[12] Second, attorney's fees were assessed by the trial court, even if the Association has not yet attempted to collect them. Third, the "proceeding" will not end, and the 21–day grace period will not begin to run, until all Daly's appeals, including this partially successful one, are exhausted. Finally, the Regulation preempts the Association's right to attorney's fees under Texas statutes, including TEX. CIV. PRAC. & REM.CODE ANN. § 38.001 and TEX. PROP.CODE ANN. §§ 82.117(4), 82.161. *See* 47 C.F.R. § 1.4000(a)(1) ("Any restriction, including but not limited to any state or local law or regulation . . . is prohibited to the extent it so impairs . . . ."); *see also* U.S. CONST. art. VI, cl. 2 ("This Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land . . . ."). Thus, we hold the trial judge erred by awarding attorney's fees because section 1.4000(a)(4) precluded such an award at the time it was made.

Daly could, as a result of orders that may be entered after remand, be liable for attorney's fees if he loses and does not comply within the 21–day grace period after his appeals are exhausted.[13] If, upon remand, the trial court awards attorney's fees against Daly, it could comply with the requirements of section 1.4000(a)(4) by making the award conditional on the exhaustion of unsuccessful appeals (as is commonly done when awarding attorney's fees on appeal) and also upon expiration of the Regulation's 21–day grace period.[14]

We sustain Daly's fourth issue.

We reverse the award of attorney's fees to the Association. We reverse that portion of the judgment disallowing Daly's counterclaim concerning the patio. We remand the cause for consideration of that counterclaim and any award of attorney's fees that may be appropriate. We affirm the judgment in all other respects.

---

12. Access, available at *http://www.fcc.gov/Bureaus*/Cable/Orders/1998/da981284.txt.

13. Daly testified without contradiction that he removed the satellite dish from his roof before trial. If so, section 1.4000(a)(4) would preclude, upon remand, any new order for attorney's fees against him for that violation, absent a finding that his claim was frivolous.

14. Enforcement at that time would depend then upon a finding by the trial court that Daly had not cured the violation within the 21–day grace period.