**Opinion issued August 15, 2023**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-22-00567-CV

_____

**THE SUSSEX COUNCIL OF CO-OWNERS, Appellant**

**V.**

**ANQI WANG, Appellee**

---

**On Appeal from the 164th District Court**
**Harris County, Texas**
**Trial Court Case No. 2018-12044**

---

## MEMORANDUM OPINION

This case concerns a condominium owner's claim against the condominium association for reimbursement of expenses related to water and sewage incursion into the owner's unit.

Appellee Anqi Wang, acting pro se, alleged that the main drain of the condominium building became blocked with clothes, which caused sewage water to

back up into her unit. According to Wang, the condominium association, The Sussex Council of Co-Owners (the "Council"), refused to remediate and restore her unit and replace her personal items. Wang sought reimbursement of those expenses from the Council.

The trial court denied the Council's no-evidence motion for summary judgment. After a bench trial, it rendered a final judgment in favor of Wang for $47,106.40, plus post-judgment interest.

The Council now appeals. In two issues, the Council challenges the legal sufficiency of the evidence supporting the trial court's findings and contends that the trial court erred in denying its summary judgment motion.

We reverse and render a take-nothing judgment in favor of the Council.

## Background[1]

The Sussex Condominium Project ("Sussex") is a 16-floor residential condominium development located in Houston. It was established in 1978 as a condominium regime by the recording of a Condominium Declaration pursuant to the predecessor of the Condominium Act.[2] The Council, comprised of unit owners,

---

[1] In her brief, Wang relies extensively on facts outside of the record and evidence not admitted at trial. We do not consider either in our analysis. *See* TEX. R. APP. P. 38.1(i); *Quorum Int'l v. Tarrant Appraisal Dist.*, 114 S.W.3d 568, 572 (Tex. App.— Fort Worth 2003, pet. denied).

[2] *See* Act of May 15, 1963, 58th Leg., R.S., ch. 191, §§ 1–26, 1963 Tex. Gen. Laws 507, 507–12 (former TEX. REV. CIV. STAT. art. 1301a was repealed and replaced in 1983 with TEX. PROP. CODE §§ 81.001–.210). Because the Sussex was created in

is a Texas non-profit corporation that administers the operation and management of the Sussex.

The respective obligations of the Council and unit owners are set forth in the Condominium Declaration.[3] They include the obligation of the Council to maintain the common elements of the development, such as the plumbing and all sewage and drainage pipes, and to obtain insurance coverage on them for the benefit of the unit owners. The Declaration additionally states that any failure to comply with the obligations therein "shall be grounds for relief for damages" "in addition to the remedies provided for by the [applicable statute]." *See* TEX. PROP. CODE § 82.161 ("[A]ny person . . . adversely affected by the violation [of the declaration] has a claim for appropriate relief" "in an action to enforce the declaration.").[4]

In October 2016, Wang purchased a two-bedroom, two-bath condominium unit located on the second floor of the Sussex. She leased the unit to her mother, Jing Lu,[5] and another tenant. Subsequently, Wang also moved in.

---

1978, it is now governed by Chapter 81 of the Property Code (the "Condominium Act"), which governs condominium regimes created before January 1, 1994, as well as by portions of Chapter 82 (the "Uniform Condominium Act"), which governs condominiums created on or after January 1, 1994. *See* TEX. PROP. CODE §§ 81.0011, 82.002(c) (specifying portions of Chapter 82 applicable to regimes created before Jan. 1, 1994).

[3]     *See* TEX. PROP. CODE § 82.003(a)(11-a).

[4]     Section 82.161 of the Uniform Condominium Act applies to a condominium regime created before January 1, 1994. *Id.* § 82.002(c).

[5]     Lu is not a party to this lawsuit.

On April 26, 2017, according to Wang,[6] "dark black polluted sewage water came out from [her] kitchen sink" and "washed" over the kitchen in her unit. The water contacted her kitchen appliances, cabinets, living room tables, chairs, and bedroom furniture. It also "washed over all [of her] personal belonging[s]" and "several oil paintings" that were on the living room floor. The next morning, a "large volume of sewage water came into [Wang's] unit again."

According to Wang, the Council refused to remediate and restore her unit and replace her personal items. She brought this suit against the Council for reimbursement of her expenses relating to such intrusion of sewage water into her unit.

The Council filed a motion for summary judgment asserting there was no evidence that it had failed to comply with any obligation owed to Wang under the Declaration or that any such breach caused Wang's asserted damages. Wang filed a response to the Council's no-evidence motion but did not attach evidence.[7] The trial court denied the Council's no-evidence motion.

---

[6] These allegations are taken from Wang's petition.

[7] Instead, Wang purported to assert a new and additional claim for "negligence in management." A reviewing court must construe a petition liberally to contain any claims that reasonably may be inferred from the specific language used in the petition and uphold the petition as to those claims, even if an element of a claim is not specifically alleged. *Optimum Bonus Tex., Inc., v. Ocwen Loan Servicing, LLC*, 2015 WL 9598829, at *2 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (mem.

4

The case was subsequently tried to the bench. At the beginning of trial, the court asked Wang: "Do you have any exhibits, . . . any documents that you care to present?" Wang responded: "Exhibits, no."

Wang then presented her mother, Lu, as her sole witness. Lu testified that, on April 26, 2017, she "saw the sewage water c[o]me out" from an unspecified location. It was "very dark, dirty black water" that "smell[ed] very bad." Lu called the Sussex property manager, who dispatched maintenance personnel. The next day, the manager sent out a plumber to investigate and perform repairs. And Lu hired a company to perform water remediation.

Lu testified that she asked Sussex to repair the unit and that it refused. She testified that Wang was without insurance on the unit, so it was not until a month later that she hired a public insurance adjustor to assess the damage.

Lu then hired a contractor, Wei Zhang, to perform "the remodeling of the house." Lu testified that there was not a written contract with Zhang. Rather, "he

---

op.). However, we cannot use a liberal construction of a petition as a license to read into the petition a claim that it does not contain. *Id*.

Here, Wang did not file an amended petition adding a claim for "negligence in management." *See* TEX. R. CIV. P. 62. And the terms "negligence" or "negligent" do not appear in Wang's original petition, which is her live pleading. Further, Wang's live pleading does not include any mention of the elements necessary to show entitlement to relief based on a claim for "negligence in management." Accordingly, even under a liberal construction of Wang's live pleading, we cannot reasonably infer from the language used that Wang sought relief based on a claim for "negligence in management." As a result, any such claim was never properly before the trial court, and we cannot consider it. *Id*.

did everything according to the insurance description." She noted that the unit and appliances were also upgraded. Zhang "purchased everything," but did not provide invoices or receipts.

The following colloquy then occurred:

THE COURT: Do you have any documentation showing that you paid Wei Zhang the amount requested by the Plaintiff? That is the question.

[Lu]: Yes, I have a document to show the money I paid. It's in the evidence—let me see evidence, evidence, it's in Evidence 12.

[The Council]: Your Honor, Plaintiff admitted no exhibits.

THE COURT: Just a moment. Just a moment. . . . I know she did not admit any exhibits. I am trying to see, however, because, obviously, she was befuddled. . . .

. . . .

THE COURT: You look like you had a few exhibits. For some reason there's 12, 13, 14, 15, 16, 17, 18, 19, 20, 21. I do not see any—okay. My goodness, they're just all out of here. 7, 8, 9, 10, 11, okay. Now, we get down to 1, 2, 3, 4, 5. Okay. 1, 2, 3, 4, 5, were evidently submitted with the Original Petition. . . .

The trial court then went through the 21 exhibits that it pulled from Wang's various filings and admitted all but four of them into evidence. Among those excluded was exhibit 7, a plumber's invoice, discussed below.

Among those admitted was exhibit 5, a damages estimate by Wang's public insurance adjuster, Daniel C. Hogan ("insurance estimate"). In his estimate, Hogan stated that a "sewer water back up" had damaged the "Hallway/Entry, Kitchen,

6

Livingroom/Breakfast area, Bedroom 1 & 2, [and] Bathroom 1 & 2." He "detail[ed] the scope ([of] work) that would need to be p[er]formed to bring the loss back to conditions before the loss occurred." He estimated that the total "Replacement Cost Value" for the "Dwelling" and "Contents" was $57,945. The listed repairs included replacing walls, doors, flooring, cabinetry, countertops, sinks, appliances (refrigerator, range, dishwasher, water heater, water softener, and garbage disposal), replacing both bathroom vanities "with Granite or Marble top[s]," both "Tile shower[s]," and resetting both toilets, bathtubs, and shower door systems.

The Council objected to the insurance estimate on the ground that it was not authenticated. The trial court overruled the Council's objections to the text, but excluded the attached photographs as "illegible."

Wang testified that she was not present when the events occurred and that Lu had handled all of the remediation and repairs. Wang testified that Zhang "based everything on the [insurance estimate]" and "didn't give us any invoices or a report during the repair process and he passed away shortly afterwards." Wang stated that Lu had paid Zhang $80,000, "but that include[d] the upgrades," and Wang did not know the cost of the upgrades. Wang also stated that Lu had "paid [Zhang] through her LLC, at first, and then [Wang] paid her back when [Wang] had the money." However, Wang conceded there was no evidence that she had personally paid

7

anyone anything with regard to the damages. She noted that, once the repairs were completed, she sold the condominium unit.

Randall Smith, owner of Randall Management, testified that his company began managing Sussex in late 2018 or 2019, after the events at issue. He explained that, pursuant to the Declaration, the Council was responsible for maintaining and repairing the common elements, which were specifically defined in the Declaration and essentially included "everything outside of the condo space." And each unit owner was responsible for maintaining and repairing the interior of their unit. Thus, although the Council was responsible for "making sure the common pipes do function," any damage caused by a backup to the inside of a unit or to personal property was the unit owner's responsibility. He further noted that unit owners were "highly encouraged" to purchase insurance to cover any damage to a unit interior or personal property. The trial court admitted a copy of the Declaration into evidence.

At the close of trial, the trial court rendered a final judgment against the Council. Based on the insurance estimate, the trial court ordered the Council to pay Wang $47,106.40 for "sewage intrusion damages."

The trial court also signed "Findings of Fact and Conclusions of Law," stating:

Findings of Facts: . . . . [T]he court found the facts that the sewage blockage happened on the common pipes of the building, and the defendant should clean and maintain it timely and properly. [sic] The blockage in the common pipes caused the sewage water intruding the plaintiff's condo unit and caused tremendous damages to the plaintiff's properties. [sic] After the damages happened, the defendant did not

8

ameliorate the damages by any means including making substantive repairs [to] the plaintiff's damaged properties. [sic] The plaintiff had to hire her own contractor to repair the damages to reduce the loss. After the plaintiff's repairs, even after the plaintiff's multiple requests, the defendant refused to pay.

Conclusions of Law: Thus, the trial court ordered that the plaintiff recovers from the defendant $47,106.40 in damages . . . .

### Sufficiency of the Evidence

In its second issue, the Council contends that Wang asserted, "without support, that a common area sewer pipe overflowed and caused the water entry and alleged damages," that "no evidence beyond mere lay witness speculation was introduced by [Wang]," that "most, if not all of the elements underlying [Wang's] claims require expert testimony, and are beyond the scope of lay testimony," and that Wang failed to present "any evidence into the record [that] supports causation."

As a threshold matter, we note that the Council has not framed its issue as a challenge to any specific findings of fact or conclusions of law.

A party appealing from a bench trial "in which the trial court made findings of fact and conclusions of law should direct [its] attack on the sufficiency of the evidence at specific findings of fact, rather than at the judgment as a whole." *Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 534 S.W.3d 558, 581–82 (Tex. App.—San Antonio 2017) (internal quotations omitted), *aff'd*, 593 S.W.3d 324 (Tex. 2020); *Shaw v. Cnty. of Dall.*, 251 S.W.3d 165, 169 (Tex. App.—Dallas 2008, pet. denied). "When a party's issue globally attacks the trial

9

court's findings of fact and there is no method by which to ascertain the [party's] true objection to the sufficiency of the evidence," the trial court's findings are binding on the appellate court. *Scott Pelley P.C. v. Wynne*, No. 05-15-01560-CV, 2017 WL 3699823, at *7 (Tex. App.—Dallas Aug. 28, 2017, pet. denied) (mem. op.); *see Trammell v. Trammell*, 485 S.W.3d 571, 576 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

However, "a challenge to an unidentified finding of fact may be sufficient if the reviewing court—after giving consideration to the number of findings, the nature of the case, and the underlying elements of the applicable legal theories—can fairly determine from the argument the specific finding being challenged." *Teal Trading & Dev.*, 534 S.W.3d at 582; *see Trammell*, 485 S.W.3d at 576.

Further, the Texas Supreme Court has instructed that "appellate courts should reach the merits of an appeal whenever reasonably possible." *Weekley Homes, LLC v. Paniagua*, 646 S.W.3d 821, 827 (Tex. 2022) (internal quotations omitted). "A brief's issue statement is sufficient if it directs the attention of the appellate court to the error about which [the] complaint is made." *Id.* (internal quotations omitted); *see Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 863 (Tex. 2005) (holding issues should be liberally construed to fairly and equitably adjudicate rights of litigants, and appellate courts should consider parties' arguments supporting each issue and not merely wording of points).

10

This case involves a single breach-of-contract claim. *See Teal Trading & Dev.*, 534 S.W.3d at 582; *cf. Wynne*, 2017 WL 3699823, at *6 ("[W]hen there are multiple findings of fact, multiple causes of action presented, a variety of legal theories involved, and a substantial record, it may not be possible for an appellate court to fairly determine from the appellate argument the specific findings of fact a party contends are not supported by the evidence.").

The trial court did not issue individual or enumerated findings in support of its judgment. Rather, as presented above, it issued a single "Findings of Fact[]" paragraph.

In its findings paragraph, the trial court did not clearly address the elements of Wang's claim. For instance, with respect to the breach element, the trial court stated: "the sewage blockage happened [in] the common pipes of the building, and the [Council] *should clean and maintain it timely and properly*." (Emphasis added.) In addition, the trial court stated that the Council "did not ameliorate the damages by any means including making substantive repairs" to Wang's property. Thus, the trial court did not expressly find that the Council breached a duty owed to Wang under the Declaration to maintain the common pipes or to repair Wang's property.[8]

---

[8]     The existence of a breach is an indispensable element of a breach-of-contract claim. *See Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019). When a trial court issues findings, but inadvertently omits an essential element of a ground of recovery, we may infer the omitted element because the judgment is presumed valid. *See Seger v. Yorkshire Ins. Co., Ltd.*, 503 S.W.3d 388,

11

We conclude that neither the trial court's findings nor the Council's briefing is a model of clarity. However, having read the trial court's "Findings of Fact[]" paragraph together with the Council's complaints in its brief, we hold that we can fairly ascertain the tenor of the Council's argument and the findings it challenges. *See Weekley Homes*, 646 S.W.3d at 827; *Teal Trading & Dev.*, 534 S.W.3d at 582. And we liberally construe the Council's complaints as a challenge to the legal sufficiency of the evidence supporting the elements of Wang's claim. *See* TEX. R. APP. P. 38.1(f) ("The statement of an issue or point will be treated as covering every subsidiary question that is fairly included."); *Tittizer*, 171 S.W.3d at 863; *see, e.g.*, *City of Pasadena v. Gennedy*, 125 S.W.3d 687, 691 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (construing legal sufficiency challenge as attack on pertinent findings and conclusions supporting judgment); *ODL Servs., Inc. v. ConocoPhillips Co.*, 264 S.W.3d 399, 417 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (although appellant did not specify which findings or conclusions it challenged, this Court "nonetheless reviewed the substance of all of its appellate arguments to determine which findings of fact and conclusions of law" were implicitly challenged).

---

401 (Tex. 2016); *Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 252 (Tex. App.—Houston [14th Dist.] 1999, pet. denied); *see also* TEX. R. CIV. P. 299. Thus, here, we infer that the trial court, in ruling in favor of Wang on her breach-of-contract claim, found that the Council breached a duty owed to her.

*Standard of Review and Overarching Legal Principles*

When an appellant challenges the legal sufficiency of the evidence supporting an adverse finding on an issue on which it did not have the burden of proof at trial, it must demonstrate that "no evidence" supports the finding. *See Exxon Corp. v. Emerald Oil & Gas Co*., 348 S.W.3d 194, 215 (Tex. 2011). We will sustain a legal-sufficiency or "no-evidence" challenge if the record shows one of the following: (1) a complete absence of evidence of a vital fact; (2) that rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact; (3) that the evidence offered to prove a vital fact is no more than a scintilla; or (4) that the evidence conclusively establishes the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). We consider the evidence in the light most favorable to the finding and indulge every reasonable inference that would support it. *Id*. at 822.

In a bench trial, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id*. at 819. Thus, it may choose to believe one witness and to disbelieve another and may resolve any conflicts in the evidence. *See id*. 819–20.

To prevail on a breach-of-contract claim, a plaintiff must establish: (1) the existence of a valid contract between the plaintiff and defendant; (2) performance or tendered performance by the plaintiff; (3) a breach of the contract terms by the

13

defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd*., 574 S.W.3d 882, 890 (Tex. 2019); *So. Elec. Servs., Inc. v. City of Hous.*, 355 S.W.3d 319, 323–24 (Tex. App.— Houston [1st Dist.] 2011, pet. denied).  The last element encompasses a causation requirement. *Pagosa Oil & Gas, L.L.C. v. Marrs & Smith P'ship*, 323 S.W.3d 203, 215 (Tex. App.—El Paso 2010, pet. denied) ("The plaintiff must show that it suffered a monetary injury, as the result of the defendant's breach.").

*Analysis*

### 1.    Valid Contract

A declaration is "the instrument that establishes property under a condominium regime." TEX. PROP. CODE § 81.002(5).  The declaration forms a contract between the homeowners association and the condominium unit owners. *Bundren v. Holly Oaks Townhomes Ass'n, Inc*., 347 S.W.3d 421, 435 (Tex. App.— Dallas 2011, pet. denied).  Under Texas law, and pursuant to the express terms of the Declaration in this case, once a unit owner accepts a deed to a condominium unit it agrees to the condominium declaration as a binding agreement. *See Daly v. River Oaks Place Council of Co–Owners*, 59 S.W.3d 416, 418 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

14

The parties here do not dispute that the Declaration in this case constitutes a valid contract between them. *See Pathfinder Oil & Gas*, 574 S.W.3d at 890. And neither party contends that it is ambiguous.

## 2. Breach of the Terms of the Declaration

We review the terms of an unambiguous agreement under a de novo standard. *See Akhtar v. Leawood HOA, Inc*., 508 S.W.3d 758, 763 (Tex. App.—Houston [1st Dist.] 2016, no pet.). In construing the terms of the Declaration, our primary objective is to give effect to the parties' intent. *Pathfinder Oil & Gas*, 574 S.W.3d at 888. We interpret contract language according to its plain, ordinary, and generally accepted meaning unless the contract directs otherwise. *Id*. We consider the writing as a whole in an effort to harmonize and give effect to all of its provisions so that none will be rendered meaningless. *Id*. at 889.

Further, we review the Declaration in accordance with the relevant provisions of the Property Code. *See Akhtar*, 508 S.W.3d at 763; *see also* TEX. PROP. CODE §§ 81.0011, 82.002(c).

Here, the trial court found, with respect to the element of breach, that "the sewage blockage happened in the common pipes of the building, and [that the Council] should clean and maintain [the pipes] timely and properly." The trial court further found that, "[a]fter the damage[] happened," the Council "did not ameliorate the damages by any means including making substantive repairs" to Wang's

15

property. Thus, the trial court found that the Council failed to comply with its obligation in the Declaration (1) to maintain the common pipes, and (2) to remediate Wang's unit.

Article X of the Declaration states that "the Council shall maintain, repair and replace, as a common expense of the Council: [a]ll portions of the common elements adjacent to or contiguous to a Unit"—including "[a]ll conduits, vents, ducts, *plumbing*, wiring and other facilities for the furnishing of utility services." (Emphasis added.) And the "maintenance and operation of the Common Elements shall be the responsibility and the common expense of the Council." Article I defines the "Common Elements" as "all of the Property, except for the Units," including "[a]ll *sewage and drainage pipes* and facilities[.]" (Emphasis added.)

Article X also requires each co-owner, such as Wang, to "repair" and "replace":

> the Fixtures (as hereinafter defined) within the Co-Owner's Unit; and
> . . . interior walls, and the finished interior surfaces of perimeter walls,
> ceilings and floors of the Unit, including, but not limited to, such
> materials as paneling, wallpaper, paint, wall and floor tile and flooring
> (but not including the subflooring). . . .

*See* TEX. PROP. CODE § 81.105 ("The boundaries of an apartment in a condominium regime are the interior surfaces of the apartment's perimeter walls, floors, and ceilings . . . .").

16

Article X of the Declaration defines "Fixtures" as:

> the personal property, appliances, machinery and equipment installed in, on or within, or affixed to, a wall, ceiling or floor of, a Unit *commencing at the point where such items connect with the Utilities*, including, but not limited to, all light fixtures, *plumbing appliances* (such as but not limited to faucets, water valves, shower heads, tubs, sinks and drain taps within a Unit), . . . range, oven, dishwasher, disposal, vented hood over kitchen sink, if any, refrigerator and the like.

(Emphasis added.)

Thus, the Declaration places the responsibility for maintaining the plumbing and the sewage and drainage pipes on the Council. And it makes the Council responsible for repair and replacement of the common elements, including any plumbing contained therein. The Declaration further places the responsibility for repairing and replacing the interior of a unit and the fixtures, as defined, on the unit owner, i.e., Wang.

With respect to the trial court's findings that "the sewage blockage happened in the common pipes of the building" and that the Council failed to "clean and maintain [the pipes] timely and properly," Wang testified that she was not present when the events occurred. Lu's testimony on this point was only that she "saw the sewage water c[o]me out" from an unidentified location and that it was "very dark, dirty black water" that "smell[ed] very bad."

Wang and Lu further testified that the Sussex property manager sent a plumber to the unit to investigate, however, Wang did not present any testimony by that

17

plumber or any other. When Lu attempted to testify about what she claimed the plumber had told her, the trial court sustained the Council's hearsay objection.

On appeal, Wang argues that exhibit 7, the plumber's invoice, supports the trial court's findings. As noted above, however, the trial court did not admit exhibit 7. Documents not admitted into evidence at trial are not properly included in the record and cannot be considered on appeal. *See Barnard v. Barnard*, 133 S.W.3d 782, 789 (Tex. App.—Fort Worth 2004, pet. denied).

The insurance estimate, discussed above, simply states that a "sewer water back up" damaged the "Hallway/Entry, Kitchen, Livingroom/Breakfast area, Bedroom 1 & 2, [and] Bathroom 1 & 2." Thus, the entire unit was affected.

Nothing is stated, however, regarding the origin of the "back up" or whether it occurred in the common pipes.[9] And there is no testimony or documentary evidence of any failure by the Council to maintain sewer pipes "timely and

---

[9] The Council complains that because Wang failed to respond to any discovery requests, her evidence should have simply been subject to mandatory exclusion under Texas Rule of Civil Procedure 193.6, thus ending the case. *See* TEX. R. CIV. P. 193.6 (providing that party who fails to timely make, amend, or supplement discovery response "may not introduce in evidence the material or information that was not timely disclosed," except on good cause and without unfair surprise or prejudice). However, by failing to timely object at trial to any evidence on this ground, the Council has waived this complaint. *See* TEX. R. APP. P. 33.1(a); *McKeehan v. Wilmington Sav. Fund Soc'y, FSB*, 554 S.W.3d 692, 697 (Tex. App.— Houston [1st Dist.] 2018, no pet.); s*ee also Sohani v. Sunesara*, 546 S.W.3d 393, 410 (Tex. App.—Houston [1st Dist.] 2018, no pet.). Moreover, because we conclude that the breach element is dispositive and that the insurance estimate does not speak to this issue, we do not reach the Council's argument on appeal that the trial court erred in admitting the insurance estimate. *See* TEX. R. APP. P. 47.1.

properly." *See, e.g.*, *Webb v. City of Fort Worth*, No. 02-21-00133-CV, 2022 WL 123219, at *6 (Tex. App.—Fort Worth Jan. 13, 2022, no pet.) (mem. op.) (holding homeowner's testimony that City had failed to timely and properly maintain and clean out sewer system was speculative and conclusory, and therefore constituted no evidence, because homeowner "did not explain how he knew what constituted reasonable periodic maintenance" of a sewer system).

Accordingly, we conclude that there is no evidence identifying the source or location of the blockage at issue—whether in "the common pipes," a neighboring unit, or simply a toilet backup inside Wang's own unit—and no evidence of the nature of the blockage—whether a sudden event or a failure to "timely and properly" perform maintenance. *See, e.g.*, *Allan v. Nersesova*, 307 S.W.3d 564, 568 (Tex. App.—Dallas 2010, no pet.) ("Allan's unit suffered eight incidents of water and sewage incursion as a result of plumbing problems and misuse of appliances in Koraev's unit.")

Because there is no evidence of a "blockage . . . in the common pipes of the building" or that the Council failed to "clean and maintain [the pipes] timely and properly," there is no evidence to support the trial court's finding that the Council failed to comply with the terms of the Declaration on this ground.

Further, with respect to the trial court's finding that the Council failed to comply with its obligation to "ameliorate the damages by any means including

19

making substantive repairs" to Wang's unit, Wang did not point to any provision of the Declaration establishing an obligation of the Council to repair the interior walls and surfaces of Wang's unit and her fixtures, i.e., appliances and personal property, under the circumstances presented in this case. To the contrary, and as discussed above, the Declaration states that Wang was responsible for repairing and replacing the interior walls, finished surfaces, flooring, and fixtures (including appliances, plumbing appliances, and personal property).

Therefore, based on our review of the record before us, we conclude that there is no evidence of any breach or failure by the Council to comply with these terms of the Declaration.[10] *See Pathfinder Oil & Gas*, 574 S.W.3d at 890; *City of Keller*, 168 S.W.3d at 810. We thus hold that the evidence is legally insufficient to support the trial court's judgment. *See Exxon Corp.*, 348 S.W.3d at 215.

We sustain the Council's second issue.

## Denial of Summary Judgment

In its first issue, the Council contends that the trial court erred in denying its motion for summary judgment. We disagree.

---

[10] As a result, we do not reach whether Wang established a causal connection between a breach by the Council and her alleged damages. *See Pathfinder Oil & Gas*, 574 S.W.3d at 890.

It is axiomatic that "a party may not, after trial and an unfavorable judgment, prevail on a complaint that the party's motion for summary judgment should have been granted." *Hernandez v. Ebrom*, 289 S.W.3d 316, 321 (Tex. 2009); *Tricon Tool & Supply, Inc. v. Thumann*, 226 S.W.3d 494, 509 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) ("After a trial on the merits, as in the present case, the denial of a motion for summary judgment may not be reviewed on appeal."). As the Supreme Court of Texas has explained:

> It would seem incongruous for a court, upon finding that a judgment following a full and complete conventional trial should be reversed because of the admission of improper evidence, to then review the action of a trial court in overruling a summary judgment, particularly if it appears from the evidence adduced upon the conventional trial that there were genuine issues of fact in the case even though the summary judgment record might not reflect this situation because of an incomplete development of the facts.

*Ackermann v. Vordenbaum*, 403 S.W.2d 362, 365 (Tex. 1966).

Because this case was tried on the merits, the trial court's denial of the Council's motion for summary judgment is not reviewable on appeal as a matter of law. *See Hernandez*, 289 S.W.3d at 321; *Tricon Tool & Supply*, 226 S.W.3d at 509.

We overrule the Council's first issue.

21

## Conclusion

Based on all of the reasons above, we reverse the trial court's judgment in all things and render judgment that Wang take nothing on her claim.


Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Guerra and Farris.